THE STATE OF OHIO, APPELLEE, *v.* DAVIS, APPELLANT.

(No. 1081—Decided March 17, 1982.)

*Mr. Gregory Happ,* prosecuting attorney, for appellee.

*Mr. James R. Willis,* for appellant.

BELL, J. After a lengthy trial by jury, Eric Davis was convicted of aggravated murder (three counts), involuntary manslaughter, aggravated robbery (three counts), aggravated arson, receiving stolen property, and grand theft.

Inasmuch as only Eric Davis and Teresa Bickerstaff █ survive to describe the events that transpired on the night of the tragedy unfolded in the record before us, we look to Davis' testimony at trial and to his taped statements for some background of the cause.

Davis testified that, having engaged in at least two telephone conversations with Teresa Bickerstaff during the evening hours prior to the commission of the crimes, he proceeded to have a friend drop him off near the Bickerstaff residence in the early hours of the morning of August 29. (Davis' taped statements include the assertion, "* * * we [Bickerstaff and Davis] had the intention of taking the car * * * and leaving.") Admitted to the home by Teresa, Davis embraced her and then loaded the .357 magnum revolver which she had obtained at his request, and which she had concealed in a towel and placed on the family room floor. According to Davis, he loaded the gun with which Teresa eventually shot her mother and two younger brothers.

Davis' description of the events of the night further revealed that prior to the shootings Teresa and he had climbed the stairs together, with Teresa carrying the gun, and that as she fired the gun, he stood next to her in the vicinity of the top stairway landing and/or Teresa's mother's bedroom doorway. Davis claimed that after the shooting, he retrieved Teresa's bag of clothing, already packed, from her room and started downstairs. Reminiscent of a line from the script of a horror story, Bickerstaff screamed to Davis words to the effect that her brothers were still alive. According to defendant's testimony concerning the night's events, he heard, at this point, another shot, and he went back up the stairs, entered the master bedroom where the mother lay with her head in a pool of blood, grabbed a .45 revolver and rifle from the room's closet, and proceeded to usher Teresa downstairs. (Davis' taped statement indicated that Teresa, at Davis' request, had, previous to his arrival at the home, obtained the rifle along with the .357 revolver.) He then reloaded the .357 magnum which he had at some point taken from Teresa, and found and took the keys to the family Datsun from Mrs. Bickerstaff's purse. (In Davis' taped statement, he said this was the time when Teresa screamed that her brothers were not dead.) Bickerstaff and Davis, carrying three guns and clothing, then proceeded to the garage area. Defendant procured a can of gasoline from the garage and re-entered the home alone. Upon entering he "threw the can (of gasoline) and * * * threw the match." Fire engulfed the house.

A thread of doubt woven throughout the assignments of error before us by defendant is whether Davis, and Bickerstaff, had the intention of committing an aggravated robbery prior to or simultaneous with the shootings of Teresa's mother and brothers. That issue will be addressed as it occurs chronologically within the claims of error. However, we note at the outset that intent lies within the mind of the individual and hence must generally be derived from an examination of proven circumstantial evidence, and logical inferences drawn therefrom. *State* v. *Huffman* (1936), 131 Ohio St. 27 [5 O.O. 325]. "While objective facts may be proved directly, the state of

a man's mind must be inferred from the things he says or does." *State* v. *Wallen* (1969), 21 Ohio App. 2d 27, 35 [50 O.O.2d 50]. A plentitude of such evidence for consideration by the jury is found within the record of the instant cause.

We now address in numerical sequence defendant's assignments of error.

### Assignment of Error I

"The trial court impermissibly invaded the province of the jury in excluding certain relevant evidence."

Defendant Davis sought the admission into evidence of *portions* of certain taped statements made by Teresa Bickerstaff during police interviews.

Defendant's appellate argument states that his "basic contention" herein is that both due process and the integrity of a criminal trial are offended when a trial court excludes relevant evidence (here Bickerstaff's statements) which amounted to a "third-party confession" with "sufficient indicia of trustworthiness" exonerating the defendant.

Our reading of the transcript of proceedings does not reveal that the trial court acted, as appellant urges, to deny him the opportunity to present Teresa Bickerstaff's taped statements to the jury. Because Bickerstaff, upon taking the stand, asserted her Fifth Amendment rights, the court properly declared her to be unavailable as a witness. Evid. R. 804(A). The court further took the view that the recorded Bickerstaff statements could only be used in their entirety. Defendant was, thus, ultimately given the choice of the admission of the statements in their entirety or the exclusion of same. Defendant and his counsel *chose* the latter. Defendant cannot now reasonably contend that the trial court excluded evidence relevant to his defense when it was at his deliberate election that the Bickerstaff statements were not placed in their entirety before the jury.

A reading and consideration of Evid. R. 106 supports the posture taken by the trial court. That rule states as follows:

"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it."

One need not look beyond the language above to find support for the propriety of the court's ruling requiring the defendant to submit to placing the statements in their entirety into evidence. Not only a wealth of common law, but the fundamental fairness of presenting statements in context rather than in isolation is behind the rudiments of Evid. R. 106. See McCormick, Evidence (2 Ed., Cleary Ed. 1972), Section 56. Wresting a part of a body of expressions from its context may result in a misconception by some or all of the jury members that may linger even, if at a later point, relevant, omitted parts of that same body of statements are supplied. See 7 Wigmore, Evidence (Chadbourn Rev. 1978), Section 2094.

Evid. R. 106 restates the above consideration and is a rule of timing, avoiding the situation where the adverse party is delayed in presenting the other part or body of evidence "which is otherwise admissible and ought in fairness to be considered contemporaneously * * *." The trial judge in the cause before us ruled correctly in applying the common law considerations of fairness as exemplified in Evid. R. 106 to the introduction of the statements of Teresa Bickerstaff.

In that no portion, or the entirety, of Bickerstaff's statements was admitted into evidence, we do not reach the issue of a violation of any right of defendant of confrontation. We find no merit in this assignment of error.

### Assignment of Error II

"The court erred, or abused its discretion, by excluding certain relevant evi-

dence, which evidence bore directly on the defendant's theory of defense."

Several times the defense sought to have admitted testimony relating to an alleged incestuous relationship between Mr. Bickerstaff and his daughter. The defense attempted to cross-examine Mr. Bickerstaff in this regard, and the state's objections thereto were sustained. The court also refused to permit the defense to question Davis so as to present further information regarding the alleged incest.

Defendant submits that any evidence tending to show Teresa Bickerstaff's independent reasons for committing these violent acts is certainly relevant to his defense, particularly so if said evidence clashes with the state's theory that these killings were solely for the purpose of facilitating thefts from the home.

The argument is made by Davis that evidence supportive of his position that Teresa Bickerstaff's report to him of "the threatened recurrence of various sexually and physically abusive acts" upon her by her father motivated Davis' being present in the Bickerstaff home at the time of the commission of the crimes in question. Such evidence, he contends, is strongly relevant to his defense and is admissible under Evid. R. 401.

That rule defines relevant evidence as "evidence having any tendency to make the existence of *any fact that is of consequence to the determination* of the action more probable than it would be without the evidence." (Emphasis added.)

We do not agree with appellant's contentions. Based upon defendant's contentions, we assume that the excluded evidence which defendant believes bore directly upon his defense would have been relevant to the assertions regarding the claims of incest between father and daughter alluded to by the defense in opening statement. These opening remarks included the following:

"[MR. WILLIS]: * * * and that unlike the relationships that existed between our parents with reference to our brothers and sisters, the evidence in this case will show that the relationship that existed between she [*sic*] and her father was incestuous.

"MR. PORTER: Objection, Your Honor, it is irrelevant, incompetent and immaterial.

"Would you please note our continuing objection to this.

"THE COURT: Objection is overruled. Exception is noted.

"* * *

"MR. WILLIS: The evidence will show that when this young girl was in the sixth grade, that she engaged in fellatio with her father, at his insistence; that this relationship continued almost unabated until she was fourteen years old, and included sexual intercourse in addition to fellatio.

"The evidence will show that when she was fourteen years of age, she was a drug addict, that her father was abusive to her, and that she ran away, * * *."

Ultimately then, one must ask: Does incestuousness between father and daughter provide a defense to any of the elements of the crimes with which Davis is charged? What fact that is of consequence to the jury's eventual determination does evidence of incest make more probable? Davis' testimony reveals that Teresa's hatred and animosity were directed toward her father, not toward her mother. Remoteness in an evidentiary sense may take on dimensions other than that of time. Here the dead victims did not include the person toward whom the hatred was apparently directed.

Teresa Bickerstaff's alleged hatred for her father due to an incestuous relationship is an ingredient to this tragedy that is laced with overtones of sensuousness, sensationalism, and perhaps of sympathy, overtones that could consume a jury's attention or, at the least, provide a lingering distraction. We find no evidence proffered at trial or in the statements of defendant or Teresa Bickerstaff that show incest perpetrated

the day or evening prior to the killings. The trial court properly left the jury in a position to base its decision upon evidence relevant and material to the participants' words and actions before, at, and following the aggravated robberies and deaths. See State v. Thomas (1981), 66 Ohio St. 2d 518 [20 O.O.3d 424], wherein the trial court's exclusion of evidence of "the battered wife syndrome" was upheld.

Motivation or reason for killing, here hatred by Teresa Bickerstaff for her father, differs definitionally from "purpose" in killing. The charges against Davis do not involve murder aggravated by prior calculation and design. Eric Davis was charged with four counts of aggravated murder, aggravated by reason of felony, i.e., that he purposely caused the deaths of each of three family members while he was committing, or attempting to commit, or while he was fleeing immediately after committing, or attempting to commit aggravated robbery and that he purposely caused the death of Fred Bickerstaff, Jr., while he was committing, or attempting to commit, or while he was fleeing immediately after committing or attempting to commit, aggravated arson.

The motive of Teresa Bickerstaff for allegedly pulling the trigger, causing at least two of these deaths, is not an element to be proven by the prosecution, nor is it relevant to Davis' defense to the "felony" murders. See Fabian v. State (1918), 97 Ohio St. 184, 189. The assignment of error is overruled.

### Assignment of Error III

"The court erred in denying the appellant's Rule 29, Ohio Rules of Criminal Procedure, Motion for Judgment of Acquittal on the aggravated murder counts."

The heart of this claim of error is the contention by defendant that his motion for acquittal on the three aggravated murder counts should have been granted because the state relied solely upon an impermissible chain of circumstantial evidence to fill critical gaps regarding the time defendant possessed the intent to commit a felony in relation to the time of the acts resulting in the deaths of Mrs. Bickerstaff and her two sons. More specifically stated, the "gap" defendant urges is that the record fails to establish directly that he manifested any intent to steal Mr. Bickerstaff's Datsun automobile prior to the acts causing the aforementioned deaths. Inherent within appellant's claim is his questioning of the sufficiency of the evidence relative to felonious intent on his part.

We do not agree with appellant's assertions. The record before us contains statements relative to this issue; these statements were given by Davis during taped interviews with federal Alcohol, Tobacco and Firearms agent Patrick Beraducci. The interviews were offered and admitted into evidence and played for the jury. Included were the following questions and responses:

"Q. [MR. BERADUCCI] Okay. Did you * * * did you go there that night with the intention of killing that family?

"A. [DEFENDANT] No, I did not really. We had the intention of just leaving * * * we had the intention of taking the car * * * and leaving." (Emphasis added.)
"* * *

"Q. [MR. WILLIS] And you went out there with the intentions of taking Mr. Bickerstaff's car?

"A. [DEFENDANT] Yes, and just leaving."
"* * *

"Q. [MR. WILLIS] And how did you get out there?

"A. [DEFENDANT] Uh, through a friend.
"* * *

"Q. [MR. WILLIS] And he drove you out to Kennard Road?

"A. [DEFENDANT] Yes, just to the edge of it and I walked down the street.

"Q. [MR. WILLIS] At 42 and Kennard * * * he dropped you off?

"A. [DEFENDANT] Yes, he did."

"* * *

"Q. [MR. WILLIS] Okay, so you had planned on taking the rifle and selling that?

"A. [DEFENDANT] Yes."

If believed by the jury, the above statements, among others, constitute *direct* bases in and of themselves upon which it could be found that Eric Davis possessed the intent to steal Mr. Bickerstaff's auto prior to the acts resulting in the deaths of the Bickerstaff family members.

At trial defendant *denied* going to the Bickerstaff home with such felonious intent. In light of the conflict between Davis' taped statements and his testimony at trial, the trial court properly left the factual issue for resolution by the jury, as well as the credibility of defendant's recorded statements as compared with those given by him at trial.

"* * * It has long been established law in Ohio that a question is one for determination by the jury when 'reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt * * *.' *State* v. *Swiger* (1966), 5 Ohio St. 2d 151 [34 O.O.2d 270], paragraph two of the syllabus; *State* v. *Antill* (1964), 176 Ohio St. 61 [26 O.O.2d 366], paragraph five of the syllabus. * * *." *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 263 [9 O.O.3d 403].

Hence, we find no error in the trial court's denial of the motion for acquittal on the aggravated murder counts. The assignment of error is overruled.

### Assignment of Error IV

"The court erred in failing to instruct the jury that to convict the defendant of aggravated murder as charged in Counts 10, 11 and 12, it was necessary that such killing or killings (1) had to have been in furtherance of a common design between the defendant and Teresa Bickerstaff; and (2) the intent to steal had to have been formulated prior to or, at the very latest, contemporaneous with the actual shootings that caused the death or deaths."

A reading of the instructions given by the trial judge to the jury reveals that in essence instructions requested by defendant were given. The court specifically contained within its instructions the various meanings of "complicity." Also included within the instructions was that if the jury found that the state failed to prove that defendant was guilty of complicity in the commission of the crimes charged, then the verdict of the jury must be one of not guilty.

We fail to see prejudice to defendant by the court's preference for language relative to "complicity" rather than "common design."

Turning to the second contention, we find the concept of time relative to the intent to commit a felony, and its relationship to the acts causing death, to be adequately conveyed to the jury members by the given instructions. We overrule this assignment of error.

### Assignment of Error V

"The court erred in denying the appellant's pretrial Motion to Dismiss pursuant to Rule 12(A), *Ohio Rules of Criminal Procedure*, and Rules 8(A) and (B), *Rules of Superintendence*."

According to the record before us, the original indictment was not the result of a bindover. It would appear that although the original case resulted in some municipal court activity, the indictment was rendered before a preliminary hearing was had. Returned on October 8, 1980, the original indictment contained nine counts against the defendant. On January 8, additional charges were returned by the grand jury; said indictments were consolidated for trial.

As we understand the argument of defendant, he is saying the provisions of

C.P. Sup. R. 8 and R.C. 2945.71 bar the state from rendering the second indictment against Davis. C.P. Sup. R. 8 relates to a case where the defendant has been bound over to the grand jury and to the need for prompt action on the part of that body to return, or not to return, an indictment; that section is not applicable here. The provisions of R.C. 2945.71 do not preclude the state from bringing additional charges against the defendant at a time subsequent to charges contained in the original indictment. The assignment of error is without merit.

The judgment is affirmed.

*Judgment affirmed.*

MAHONEY, P.J., and HUNSICKER, J., concur.

HUNSICKER, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.