THE STATE OF OHIO, APPELLEE, *v.*
GOTSIS, APPELLANT.

(Nos. 3468 and 3529—Decided
February 2, 1984.)

*Mr. Gregory A. White,* prosecuting attorney, for appellee.

*Mr. James M. Burge, Mr. Jack W. Bradley* and *Mr. Gerald A. Messerman,* for appellant.

MAHONEY, J. Defendant George Gotsis appeals his convictions for nine counts of intentionally making, uttering or selling false prescriptions in violation of R.C. 2925.23(B)(1). We affirm.

George Gotsis was charged with seventeen counts of intentionally making, uttering or selling false prescriptions in violation of R.C. 2925.23. Counts 1 through 12 of the indictment involved prescriptions written by the appellant in 1981 for Metropolitan Enforcement Group ("MEG") undercover agents Eddie Young, Steve Yautz, Leon Caver and Sam Caroballo as well as one prescription written for appellant's patient Debbie McGee. Each of the 1981 prescriptions was for Adipex-P, a Schedule IV appetite suppressant. Counts 13 through 17 involved prescriptions written by Gotsis in 1982 for MEG undercover agent Keane Toney. Toney's prescriptions were for Talwin, a Schedule IV pain reliever. At the time the offenses were committed, Gotsis was a medical doctor licensed to prescribe controlled substances. However, the state alleged that the prescriptions were issued outside the course of professional practice and were not for a legitimate medical purpose and, thus, were false pursuant to R.C. 3719.01 and in violation of R.C. 2925.23(B)(1).

The fourth and fifteenth counts of the indictment were dismissed before trial.

Count 16 was dismissed at the close of the state's case on appellant's motion for a judgment of acquittal. The jury found appellant guilty of nine of the remaining fourteen counts. Gotsis was sentenced to serve a total of five to twenty-five years in the state penitentiary and to pay a fine of $10,000.

## Assignment of Error 1

"The trial court erred, and to the prejudice of appellant, in admitting, over objection, tape recordings of conversations between undercover MEG agents and appellant where the recordings were substantially inaudible and had very little probative value."

MEG agents made audio tape recordings of fourteen conversations with Dr. Gotsis during which appellant issued prescriptions for controlled substances at the agents' requests. The recordings were made by devices concealed on the agents' persons. All fourteen recordings contain some degree of background noise and are, to various extents, inaudible. Over objection, the trial court permitted the state to play the tapes during the trial; admitted the tapes as evidence; and allowed the jury to replay the tapes during its deliberations. Gotsis contends that the recordings are untrustworthy and confusing and should not have been admitted.

In order to be admissible, audio recordings must be authentic, accurate and trustworthy. *United States* v. *Mitchell* (C.A.D.C. 1976), 559 F. 2d 31, certiorari denied (1977), 431 U.S. 933; and *United States* v. *Slade* (C.A.D.C. 1980), 627 F. 2d 293. Admission into evidence of tape recordings containing inaudible portions is a matter within the sound discretion of the trial court. *United States* v. *Williams* (C.A. 8, 1977), 548 F. 2d 228; and *United States* v. *Skillman* (C.A. 8, 1971), 442 F. 2d 542, certiorari denied (1971), 404 U.S. 833. In determining whether to admit tape recordings, the trial court must assess whether the unintelligible portions are so substantial as to render the record-

ings as a whole untrustworthy. *United States* v. *Bell* (C.A. 8, 1981), 651 F. 2d 1255; and *United States* v. *Young* (C.A. 8, 1973), 488 F. 2d 1211.

In the instant case, the state presented extensive testimony as to the recording and subsequent custody of all the tapes. Defendant presented nothing to indicate that the recording had in any way been altered. Further, the MEG agents who recorded the conversations testified as to the content of the conversation before each tape was played. After playing each tape, the agent explained the sources of various background noises thereby clarifying any problems caused by poor quality. The defendant had the opportunity to cross-examine the agents concerning the testimony as well as the opportunity to offer his version of the inaudible portions so as to clear up any ambiguities that the recording may have raised. The tapes were clearly relevant in corroborating the agents' testimony. Under these circumstances, we find no abuse of discretion. See *United States* v. *Bell, supra; United States* v. *Slade, supra;* and *United States* v. *Jones* (C.A. 10, 1976), 540 F. 2d 465.

## Assignment of Error 2

"The trial court erred, and to the prejudice of appellant, in admitting, over objection unsubstantiated, irrelevant and prejudicial testimony designed to portray appellant as a purveyor of illegal drugs to small children."

The state presented testimony concerning the abuse potential of and the illegal market for Talwin and Adipex-P. Both agent Toney and Timothy Benedict, a consultant for the State Board of Pharmacy, testified that drug users "cook" Talwin and inject the solution into a vein to obtain a euphoric "high." Agent Young testified that Adipex-P, also known as "speed," is sold primarily to juveniles for $3 to $5 a tablet.

Gotsis objects to Young's testimony, contending that Young is not an expert

and, therefore, should not have been permitted to give an opinion as to "street" use and value of Adipex-P. We do not agree.

Young stated that he has been employed by MEG in Lorain County as an undercover agent for four years. Due to his employment, he is aware of the market for and abuses of various controlled substances. Thus, he qualifies as an expert witness. The issues raised on cross-examination concerning the extent of Young's knowledge of the subject go to the weight rather than the admissibility of Young's testimony.

Gotsis further contends that all evidence of the illegal market for and the abuse of Talwin and Adipex-P was irrelevant and highly prejudicial. In support of his arguments, he cites *United States* v. *Green* (C.A. 6, 1977), 548 F. 2d 1261 and *United States* v. *Anderson* (C.A. 6, 1978), 584 F. 2d 849, wherein the Sixth Circuit Court of Appeals held that such testimony was not relevant either to charges of conspiracy to import marijuana or to conspiracy to manufacture the controlled substance "DMT."

However, in *United States* v. *Kirk* (C.A. 6, 1978), 584 F. 2d 773, the same court permitted testimony concerning the illegal use of a controlled substance and its physiological effects on the body, saying:

"Considering all of the issues in this case, including the charge of conspiracy in which it was charged that the object of the conspiracy was for the appellant to supply written orders purporting to be prescriptions to others to enable them to obtain controlled substances for personal use and further distribution, this evidence was relevant." *United States* v. *Kirk, supra,* at 788.

In *Anderson,* the court commented on its holding in *Kirk* as follows:

"The recent decision by this Court in *United States* v. *Kirk,* 584 F. 2d 773, (6th Cir., 1978), upheld the conviction of a doctor charged with conspiracy to supply written orders purporting to be prescriptions to others, enabling them to obtain controlled substances for personal use and further distribution. Evidence concerning the manner in which these drugs were used and the effects they produce was introduced at trial. We need not reach the question of admissibility which was involved in that case, because Dr. Kirk had raised the defense that his prescriptions were issued for a lawful, medical purpose, primarily weight control. The evidence objected to tended to show that the drugs involved were subject to abuse if their use was not carefully supervised, and that prescriptions for drugs in the quantities involved could not have been legitimately intended for a medical purpose. The court held that in view of 'all of the issues in this case * * * this evidence was relevant.' * * * No such defense was raised in the present case." *United States* v. *Anderson, supra,* fn. at 851-852.

In the instant case, the appellant was charged with intentionally making, uttering, or selling false prescriptions. He admitted issuing the prescriptions but contended that some were written under duress and others were written in the course of his professional practice for a legitimate medical purpose. Thus, the evidence concerning abuse potential, illegal use and "street value" of the drugs is relevant to both the issues of intent and the medical legitimacy of the prescriptions.

Assignment of Error 3

"The trial court erred, and to the prejudice of appellant, in permitting the state to elicit expert opinion testimony in response to hypothetical questions which: (1) were lengthy and confusing, (2) were not supported by facts presented at trial, (3) omitted facts critical to the witness' opinion, and (4) contained highly irrelevant and prejudicial arguments by the state."

We have examined the hypothetical

questions asked Dr. Cover and compared them to the testimony of agents Young, Yautz, Toney and Caver. The questions accurately reflect the facts presented at trial and contain no irrelevant statements or arguments. Further, said questions are not unreasonably lengthy nor are they confusing. Appellant had the opportunity to present his version of the facts in hypothetical questions on cross-examination as well as the opportunity to submit expert evidence to the contrary. We find no error.

### Assignment of Error 4

"The trial court erred, and to the prejudice of appellant, in admitting opinion testimony which was without factual foundation, which was unsupported by applicable authority, and which invited conviction upon proof of wholly innocent conduct."

Appellant contends that the trial court erred in admitting expert testimony from physicians who had little personal experience in perscribing Talwin and Adipex-P. Both Dr. Cover and Dr. Hofman indicated some familiarity with both drugs either through reading medical literature on the subject or through personal experience. Thus, their opinions were properly admitted for the weight to be afforded their testimony.

Dr. Cover testified that, before prescribing any controlled substance, a physician should elicit the patient's chief complaint, perform a minimal physical examination, and take a patient history. She also stated that she personally would further test a patient by X-ray and perhaps by a myelogram and/or consultation with an orthopedic specialist before prescribing Talwin for lower back pain. Gotsis argues that the jury could find him guilty for prescribing Talwin without such extensive testing. However, in closing argument, the prosecutor clearly stated that minimum medical standards do not necessarily include a myelogram or referral to an orthopedic surgeon. Indeed, even

without this comment, the jury could distinguish between minimal standards required of all physicians and the standards Dr. Cover personally adheres to.

Appellant further contends that Dr. Cover's testimony should have been excluded because she opined that, in each hypothetical situation, no physician-patient relationship existed. According to appellant, Dr. Cover misdefined the relationship. However, this point was clarified on cross-examination. Thus, we find no prejudice.

### Assignment of Error 5

"As interpreted by the trial court, and as applied to the facts in the instant case, R.C. 2925.23(B)(1) is unconstitutionally overbroad, proscribes wholly innocent conduct, and violates due process of law."

Appellant contends that since there is no statute or regulation clearly stating the circumstances under which a physician may prescribe Talwin and Adipex-P, he was unable to determine which tests he should have performed before writing the prescription at issue. Thus, according to Gotsis, R.C. 2925.23(B)(1) is overbroad when applied to the facts of this case.

The record reveals that, on at least nine occasions, MEG agents requested prescriptions for controlled substances indicating to Gotsis that they had no medical problems and wanted the drugs for resale and/or for their own personal use to "get high." In each case, Gotsis did not elicit a chief complaint; did, at best, a cursory physical examination; and failed to take any patient history. Any physician, indeed even a lay person, would know that issuing a prescription under these circumstances is "pushing drugs" and not practicing medicine. Gotsis' contention that he was convicted for failing to do the tests recommended by Dr. Cover is clearly without merit. It is inconceivable that Gotsis did not know that his conduct was illegal.

### Assignment of Error 6

"The trial court erred and to the prejudice of appellant, in overruling appellant's motions for judgment of acquittal at the close of the state's case and at the close of the evidence."

R.C. 3719.01(CC) provides:

" 'Prescription' means a written or oral order for a controlled substance for the use of a particular person or a particular animal given by a practitioner in the course of professional practice and in accordance with the regulations promulgated by the director of the United States drug enforcement administration, pursuant to the federal drug abuse control laws."

In *State* v. *Black* (May 26, 1982), Lorain App. No. 3272, unreported, this court held at page 5:

"Clearly, an order for a controlled substance written outside the scope of a practitioner's professional practice cannot be a true prescription as defined in the statute. If not a true prescription, it must necessarily be false. Thus, a practitioner who intentionally makes a prescription that is outside the course of his professional conduct is subject to prosecution under R.C. 2925.23(B)(1). * * *"

Gotsis argues that a prescription written outside the course of his professional practice and not in accordance with federal regulations is not a "prescription" as defined in R.C. 3719.01(CC). Thus, according to appellant, he did not issue prescriptions and cannot be convicted pursuant to R.C. 2925.23(B)(1).

We reject such a fatuous construction of R.C. 3719.01(CC) which would render R.C. 2925.23(B)(1) a nullity.

### Assignment of Error 7

"The trial court erred, and to the prejudice of appellant, by denying appellant the opportunity to speak in his behalf prior to imposing sentence, by denying appellant the opportunity to examine the presentence report and by relying upon inaccurate, immaterial and unsubstantiated information at the time of sentencing and in considering appellant's motion for shock probation."

The trial court read the presentence report; took notice of many letters written on Gotsis's behalf; and permitted two attorneys to speak for Gotsis before pronouncing sentence. The trial court did not afford the appellant the opportunity to speak before imposing the sentence. However, the omission was immediately brought to the court's attention, and the hearing was immediately reconvened to allow appellant to speak. He stated that he loves his wife and children. Since two attorneys had extensively stated the facts underlying their plea for leniency, and appellant's affection for his family was evident in his trial testimony, he has failed to show that the failure to afford him an opportunity to speak has prejudiced him in any way.

Pursuant to R.C. 2951.03 and Crim. R. 32.2(C)(1) the presentence investigation report is confidential and need not be furnished to either the defendant or the prosecutor. The refusal of the trial court to permit the defendant to review the presentence report did not abrogate his constitutional rights. We find no abuse of discretion.

The suspension or imposition of sentence is a matter entirely within the discretion of the trial judge. *In re Reed* (1969), 21 Ohio App. 2d 1 [50 O.O.2d 7]. We find nothing to indicate that the court abused its discretion.

We overrule all of appellant's assignments of error. The judgment is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.