KENT STATE UNIVERSITY, Appellee,

v.

OHIO CIVIL RIGHTS COMMISSION et al., Appellants.

[Cite as *Kent State Univ. v. Ohio Civ. Rights Comm.* (1989), 64 Ohio App.3d 427.]

Court of Appeals of Ohio,
Portage County.

Nos. 1982, 1984.

Decided Dec. 26, 1989.

428

*Harley Kastner,* for appellee.

*Anthony J. Celebrezze, Jr.,* Attorney General, for appellant Ohio Civil Rights Commission.

*Richard W. Shrake II,* for appellant Linda Gorby.

JOSEPH E. MAHONEY, Judge.

This is an appeal from a judgment of the Court of Common Pleas of Portage County reversing an Ohio Civil Rights Commission order finding that claimant, Linda Gorby, was unlawfully suspended from her position as purchasing agent for appellee, Kent State University, on August 3, 1983.

Claimant first became employed by the appellee on October 21, 1981. Her job performance was always satisfactory, but she had experienced health problems dating back to April 1978. Specifically, her family physician diagnosed her condition as laryngeal stridor with laryngospasm. It is a respirato-

ry problem characterized by shortness of breath and difficulty in breathing. A laryngeal stridor is a noisy crowing-type of respiration which occurs when one breathes in. A laryngospasm is an involuntary sustained contraction of the voicebox, which interferes with an individual's ability to breathe.

Although it is disputed what caused these periodic attacks, they generally occurred when there was a strong odor in the air. They have been brought on by the fumes from a rubber extruder, the deep fryer at a bake shop, auto exhaust, cleaning solutions, cooking shrimp in boiling water, asphalt, pesticides, and an electrical problem in her car. When these attacks occurred, Gorby had difficulty breathing, she wheezed, and her voice became raspy. Typically, Gorby's condition improved rapidly if she escaped from the odor and breathed fresh air.

When these attacks occurred at work, she would step outside or to another part of the building for a few minutes until the symptoms dissipated, then return to her work. Although these incidents were somewhat disturbing to her co-workers, they did not detract from the quality of her work. On just a couple of occasions, the attacks were severe enough to cause Gorby to collapse and be taken to a hospital.

During the course of her employment at Kent State University, Gorby has been examined by eight different doctors in an attempt to discover the triggering factor for her attacks. All agree that she suffered from laryngeal stridor with laryngospasm, but the opinions as to the cause were varied. They ranged from a physical sensitivity to a physical irritation, to allergies, to a psychological or hysterical reaction. Some believe a physical irritation occurred which was then translated into the resulting symptoms through a conversion reaction.

The term "conversion reaction" is descriptive of a condition whereby an individual transforms an emotional problem into a physical symptom. An identifying characteristic of a conversion reaction is that upon examination no true organic impairment exists, although the symptoms are very real to the individual suffering from such a condition. Conversion reactions differ from psychosomatic disorders in that in psychosomatic disorders the emotional conflict typically results in visible signs of organic change. Conversion reactions are not life threatening; however, they are frightening to the individual and are functionally limiting and abnormal.

The general consensus among the physicians as to preventing the attacks was to separate Gorby from the environment where the irritants were present. If she was not subjected to strong odors, the physical manifestations of her problem would cease.

Appellee, Kent State University, made several attempts to accommodate Gorby to improve her situation. An industrial hygienist was brought in to test the air in Gorby's office, but his report indicated the air was clean. The possibility of moving Gorby to another building was considered but ruled out because the logistics of her job required her to be in her present building for a considerable portion of the day. In addition, the appellee believed that no building would be totally free of noxious gases, dust and fumes. It was also suggested that Gorby trade offices with a fellow worker, but this idea was rejected by Gorby because the other office was just two offices down from hers and she believed the switch would not improve her situation. These attempts to accommodate were later deemed insufficient by the Ohio Civil Rights Commission.

After appellee decided that it could not provide Gorby with a suitable working environment, it placed her on medical disability leave on August 3, 1983. She was suspended for "physical incapacitation" for a period of three years or until she could prove that she could return to work with no ill side effects.

After Gorby was suspended, it was determined by the appellee that the cost of providing a totally clean environment for her would be in excess of fifty thousand dollars.

In 1984, claimant Gorby was referred to an allergist to help determine what types of odors she was most sensitive to. He found she was sensitive to mercury, benzoperoxide, sodium laurel sulphate and freon and that she reacted adversely to pesticides, natural gas, asphalt, auto exhaust, cigarette smoke, hair sprays, cosmetics, rubber products, and anything containing petrochemicals; she was particularly sensitive to formaldehyde and its components.

The allergist suggested that Gorby be permitted to return to work and provided with an air ionization/filtration device at a cost of approximately two hundred dollars. She was reinstated to her former position in April 1985, and her new office was two offices down from her original office.

Since her return to work, Gorby has suffered an occasional attack but they have been less frequent and less severe than before she was suspended.

Following Linda Gorby's suspension, she filed a charge of unlawful handicap discrimination with the Ohio Civil Rights Commission ("the commission") on October 31, 1983. Efforts at conciliation failed and on June 11, 1985, the commission issued its complaint and notice of hearing No. 4250 which alleged handicap discrimination.

On September 24 and 25, 1985, a public hearing was held on the matter before a duly appointed hearing examiner. On June 23, 1986, the commission issued its final order holding that Kent State University had unlawfully discriminated against Gorby due to her respiratory disability. The university was ordered to provide her back pay plus interest, contribute to her retirement account, and to credit her with additional vacation time and sick leave.

On October 17, 1986, appellee filed an appeal with the Portage County Court of Common Pleas. The matter was submitted to the court on briefs and an order was issued by the court on March 24, 1988, reversing the commission's decision. On April 21, 1988, the commission filed a timely notice of appeal. On April 25, 1988, Gorby filed a timely notice of appeal.

There are two appellants involved in these companion cases. The commission is the appellant in case No. 1982, while Gorby is the appellant in case No. 1984. Their stated assignments of error, though worded differently, are essentially the same. It would be redundant to list both sets of assignments of error, so those proffered by the commission will be addressed with the understanding that the analysis applies as well to the corresponding assignments of error of claimant, Linda Gorby.

"1. The court of common pleas erred as a matter of law in finding that the complainant was not handicapped.

"2. The court of common pleas erred in not affirming the commission's order where the order was supported by reliable, probative and substantial evidence on the record as a whole.

"3. The court of common pleas erred in failing to find that the Ohio Civil Rights Commission established a prima facie case of handicapped discrimination.

"4. The court of common pleas erred in not finding that the complainant was a qualified handicapped individual.

"5. The court of common pleas erred in failing to place the burden on the appellee to prove that its failure to accommodate was justified."

Appellants' first, third, fourth, and fifth assignments of error address the substantive components of a claim for unlawful handicap discrimination. Appellants' second assignment of error addresses the standard of review applicable to the common pleas court in this case. It encompasses the probative value of the evidence that was introduced to support each of the components of the claim. For this reason, appellants' second assignment of error will be addressed last.

In their first assignment of error, appellants contend that complainant, Linda Gorby, was handicapped at the time of her suspension as defined in R.C. 4112.01(A)(13).

R.C. 4112.01(A)(13) provides:

" 'Handicap' means a medically diagnosable, abnormal condition which is expected to continue for a considerable length of time, whether correctable or uncorrectable by good medical practice, which can reasonably be expected to limit the person's functional ability, including, but not limited to, seeing, hearing, thinking, ambulating, climbing, descending, lifting, grasping, sitting, rising, any related function, or any limitation due to weakness and significantly decreased endurance, so that he cannot perform his everyday routine living and working without significantly increased hardship and vulnerability to what are considered the everyday obstacles and hazards encountered by the nonhandicapped."

The commission determined that Gorby was handicapped within the meaning of the law. The reviewing court held that she was not handicapped because her condition was not medically diagnosable and because she did not experience problems in performing her daily routine. The court stated that, because there were differing opinions as to what her condition was, it could not be considered medically diagnosable. The court further stated that, since Gorby had suffered only two incidents while at her home, she did not experience increased hardship in her day-to-day life.

The reviewing court erred in its conclusions. Evidence introduced at the commission's hearing established that Gorby suffered from laryngeal stridor with laryngospasm, but the cause for this infliction was not clear. Some physicians believed it was an organic reaction to certain sensitivities or allergies, while others believed it to be the result of a psychological reaction to her acute sensitivity to strong odors. It was this divergence of opinion as to the cause of Gorby's problems that led the common pleas court to decide that her illness was not "medically diagnosable."

This construction of the statute is simply too restrictive. That more than one diagnosis exists does not make a condition or disease medically undiagnosable. Such a conclusion would enable employers to defeat the rights of a handicapped person by merely raising different names for the same medical condition. Further, there is bound to be a divergence of opinion within the medical community concerning the cause or causes of any number of conditions or diseases at any point in time.

The evidence clearly supports the fact that appellant, Gorby, suffered from a medical condition that caused her difficulty in breathing. Laryngeal stridor

with laryngospasm is a recognized medical abnormality. It is not necessary that all of the medical community agree as to its cause. For purposes of R.C. 4112.01(A)(13), Gorby's condition was "medically diagnosable."

The common pleas court also determined that Gorby should not be considered handicapped because the record failed to show that her condition caused significantly increased hardship in her day-to-day life. The court apparently concluded that a person's daily routine "at home" would have to be affected in order for that person to be considered handicapped under the statute. The court based its reasoning on *Columbus v. Ohio Civil Rights Comm.* (1985), 23 Ohio App.3d 178, 23 OBR 421, 492 N.E.2d 482.

In *Columbus, supra,* the Court of Appeals for Franklin County reviewed a trial court's holding that the commission had failed to establish the existence of a handicap. The appellate court implied that it was necessary to prove hardship *at home* when it stated:

"Furthermore, at least one of the police applicants testified that she commonly performed her everyday routine living and working functions at home without use of contact lenses. Likewise, the other two applicants gave no testimony regarding significantly increased hardship and vulnerability that they had encountered in their day-to-day life." *Id.* at 181, 23 OBR at 425, 492 N.E.2d at 486.

This interpretation of the statute would severely limit the number of people who could benefit from its protection. For example, an asthmatic may take extra precautions to ensure that his home environment is as free of allergens as is possible. He may install hardwood floors, use foam rubber pillows, and decorate and furnish with only synthetic materials. He has much better control over his home environment than his work environment. The fact that he must avoid such mundane hazards as wool fiber or pets is what makes him handicapped, not whether he suffers in his own home. He is able to remove from his personal environment some of the everyday hazards and obstacles that would not bother him but for his handicap.

In the instant case, Gorby is less likely to suffer an attack while at home because she can better control her environment as to the fumes and odors that irritate her. She can protect against everyday obstacles and hazards such as ammonia, cleaning fluids, cigarette smoke, perfumes, and insecticides. The fact that Gorby can reduce the frequency of attacks in her own home should not exclude her from the protection of the statute, the purpose of which is to protect against discrimination in the workplace.

There is ample evidence on the record to support the fact that Gorby experienced increased hardship in her day-to-day life. This, in addition to the

determination that Gorby's condition was medically diagnosable, qualifies her as being handicapped as defined in R.C. 4112.01(A)(13).

The appellants' first assignment of error is well taken.

In their fourth assignment of error, appellants assert that the common pleas court erred in not finding that the complainant was a qualified handicapped individual.

■ The Ohio Supreme Court indicated in *Hazlett v. Martin Chevrolet, Inc.* (1986), 25 Ohio St.3d 279, 25 OBR 331, 496 N.E.2d 478, that a prima facie case of handicap discrimination includes showing that complainant was handicapped; that the action taken by the employer was, at least in part, because the complainant was handicapped; and that the complainant, though handicapped, can safely and substantially perform the essential functions of the job. The third element is the definition of a qualified handicapped person as defined in Ohio Adm.Code 4112-5-02(J).

■ The commission specifically found that Gorby was a qualified handicapped individual who could safely and substantially perform the essential functions of her job as purchasing agent. The reviewing court did not address this matter.

Evidence introduced at the commission's hearing established that Gorby satisfactorily performed her duties as purchasing agent. She received above average evaluations, pay increases, and a promotion to Purchasing Agent II. The record reveals no disciplinary actions taken against her. When the attacks occurred, Gorby would leave her work area until the symptoms dissipated, and her job performance did not suffer.

Appellants' fourth assignment of error is well taken.

■ Appellants' fifth assignment of error asserts that the common pleas court erred in failing to place the burden on the appellee university to prove that its failure to accommodate was justified.

The employer has an obligation to make a reasonable accommodation to the handicap of an employee unless the employer can prove that such accommodation would impose an undue hardship on the conduct of the employer's business. Ohio Adm.Code 4112-5-08(E)(1). The fact that the effort to accommodate need only be reasonable was addressed in *Western Elec. Co. v. Ohio Civil Rights Comm.* (Jan. 15, 1985), Franklin App. No. 84AP-608, unreported, 1985 WL 17722:

"Western Electric does not question the validity of Ohio Admin.Code. Sections 4112-5-08(E)(1) and (4), which require an employer to make reasonable accommodation to the handicap of an applicant, where such accommoda-

tion will not impose undue hardship upon the employer, and provide that an employer may not avail himself of the exception provided by R.C. 4112.02(L), where reasonable accommodation would remove the limitation on the applicant's ability to perform the job. However, Western Electric is correct in its contention that the commission erred to the extent that it required Western Electric to show the 'impossibility' of accommodating Wright. In doing so, it violated its own rule, which speaks in terms of reasonable accommodation and undue hardship." *Id.* at 3–4.

Ohio Adm.Code 4112–5–08(E)(2) provides some guidance in suggesting what types of accommodations would be suitable. It provides in pertinent part:

"Accommodations may take the form, for example, of providing access to the job, job restructuring, acquisition or modification of equipment or devices, or a combination of any of these. Job restructuring may consist, among other things, of realignment of duties, revision of job descriptions or modified and part-time work schedules. * * *"

In the present case, evidence at the commission's hearing established, and the commission concluded, that the appellee university made a small attempt to accommodate. Appellee considered moving Gorby to another office outside of the supply center but rejected that idea as being unworkable in that it would separate her from her support staff. Appellee offered to move Gorby two offices down from her own, but Gorby did not believe that such a short move would benefit her.

Appellee also called in an industrial hygienist to test the environment in Gorby's office. In addition, she was sent to an allergist and the university counseling center for a psychological evaluation. Curiously, appellee suspended Gorby *before* it received the reports from the industrial hygienist, the allergist and the counseling center. These can hardly be considered attempts to accommodate when any possible help they may have provided was eliminated by the premature suspension.

On the other hand, alternative forms of accommodation could have been attempted by appellee but were not. An air conditioner/air filter type of device could have been installed in claimant's office to cut down on the amount of fumes and pollutants in claimant's environment. (Note: An air filter was installed in claimant's office upon her return to work which resulted in significantly fewer attacks.) Claimant could have been warned in advance when carpet cleaning or fumigation would be occurring so that she could have adjusted her schedule to avoid such chemicals. At the very least, appellee could have accommodated the claimant by maintaining the status quo and allowing Gorby to leave the office briefly to obtain fresh air when necessary.

This method had worked before as evidenced by the fact that her work was being performed at a satisfactory level.

The common pleas court determined that appellee made the necessary accommodations; however, this conclusion is not supported by the evidence. Among other reasons for its conclusion, the court stated, " * * * Experts were hired who determined that there were no unduly high levels of contaminants in the air in and around Claimant's Office. * * * [I]t was suggested that Claimant apply for a job located at another part of the University, and that Claimant seek counseling as some of her physicians had suggested. * * * "

With regard to the air experts and the medical counseling, appellee was not aware of the results of these tests when claimant was suspended. As for the alternate job suggestion, it was not made to the claimant until the meeting when she was told that she was being placed on disability leave, and no overt action was taken by appellee to assist Gorby.

The evidence fails to support the reviewing court's determination that appellee attempted the necessary accommodations. This is especially true in light of the fact that the reviewing court considered facts that were not known to the university until after it had already suspended Gorby. Appellee's effort to accommodate was less than reasonable in this case.

As the hearing examiner pointed out, the appellee could have pursued other methods of accommodation prior to taking the harsh step of suspension. Among other alternatives, the appellee could have moved Gorby's office to another part of the building or to an entirely different building on a temporary basis to see if it was logistically possible for her to perform her job outside of the supply center. It also could have warned Gorby about the planned presence of odors (*i.e.*, chemicals from carpet cleaning and pesticide spraying) so that she could have made alternate arrangements on those days.

Appellant's fifth assignment of error is well taken.

Appellant's third assignment of error asserts that the common pleas court erred in finding that the commission had failed to establish a prima facie case of handicap discrimination.

The Ohio Supreme Court in *Hazlett, supra,* stated that, in order to establish a prima facie case of handicap discrimination, the commission must show that the complainant was handicapped; that the complainant can safely and substantially perform the essential function of the job in question despite being handicapped; and that the action was taken by the employer, at least in part, because of the complainant's handicap.

It has been established in the discussions of the first and fourth assignments of error that Gorby was handicapped but that she could safely and substantially perform the essential function of her job. Further, the appellee has admitted to suspending Gorby because of her medical problem. It is clear that the commission established a prima facie case of handicap discrimination. This was the finding of the hearing examiner, and it was amply supported by the evidence.

Appellants' third assignment of error is well taken.

Appellants' second assignment of error asserts that the common pleas court erred in not affirming the commission's order where the order was supported by reliable, probative and substantial evidence.

R.C. 4112.06 provides for judicial review of final orders of the commission in courts of common pleas. R.C. 4112.06(E) states:

"The findings of the commission as to the facts shall be conclusive if supported by reliable, probative, and substantial evidence on the record and such additional evidence as the court has admitted considered as a whole."

■ It is well established that a reviewing court must affirm an order of the commission if it is supported by reliable, probative and substantial evidence on the entire record. *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128; *Miller Properties v. Ohio Civil Rights Comm.* (1972), 34 Ohio App.2d 113, 63 O.O.2d 169, 296 N.E.2d 300.

Further, the Ohio Supreme Court stated in *Farrand v. State Medical Bd.* (1949), 151 Ohio St. 222, 39 O.O. 41, 85 N.E.2d 113:

" * * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of men equipped with the necessary knowledge and experience pertaining to a particular field. In providing for an appeal from the decision of such a board or commission, the General Assembly did not intend that a court should substitute its judgment for that of the specially created board or commission but did intend to confer a revisory jurisdiction on the court. * * * " *Id.* at 224, 39 O.O. at 42, 85 N.E.2d at 114.

In addition to the expertise that the commission has in these matters, it also has the opportunity to observe the demeanor of the witnesses and evaluate credibility.

■ In reviewing the lower court's reversal of a civil rights determination, the appellate court's standard of review is limited to abuse of discretion. *Columbus v. Ohio Civil Rights Comm., supra.*

"The term 'abuse of discretion' refers to more than a minor error in law or in judgment, implying instead that the attitude of the court in its decision was unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157 [16 O.O.3d 169, 172–173, 404 N.E.2d 144, 149]; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 [5 OBR 481, 450 N.E.2d 1140]. * * * " *Id.*, 23 Ohio App.3d at 180, 23 OBR at 424, 492 N.E.2d at 484.

In the present case, the commission determined after hearing all the evidence that Gorby had established a prima facie case of handicap discrimination. It concluded that there was reliable, probative, and substantial evidence indicating that claimant was handicapped; that she could safely and substantially perform the essential functions of her job; and that she was suspended because of her handicap. Further, the appellee's efforts at accommodation fell short of being reasonable. These conclusions appear quite sound based on the record. The common pleas court's reversal of the commission's findings was, therefore, unreasonable, arbitrary, or unconscionable. It was abuse of discretion for the lower court to reverse the findings of the commission.

Appellants' second assignment of error is well taken.

For the reasons stated in the opinion of this court, each assignment of error is sustained, and it is the judgment and order of this court that the judgment of the trial court is reversed and the decision of the commission is reinstated.

*Judgment reversed.*

CHRISTLEY, P.J., and FORD, J., concur.