**EL GRANDE STEAK HOUSE, Appellant,**

v.

**OHIO CIVIL RIGHTS COMMISSION, Appellee.**

[Cite as *El Grande Steak House v. Ohio Civ. Rights Comm.* (1994), 99 Ohio App.3d 557.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 94–A–0025.

Decided Dec. 23, 1994.

*James M. Lemieux,* for appellant.

*Lee Fisher,* Attorney General, and *Marilyn Tobocman,* Assistant Attorney General, for appellee.

JOSEPH E. MAHONEY, Judge.

Appellant, El Grande Steak House, appeals the judgment of the Ashtabula County Court of Common Pleas affirming the final order of defendant-appellee, Ohio Civil Rights Commission. Having found appellant's assignments of error to be without merit, we affirm.

On April 26, 1990, Laura J. Graddy ("Graddy") filed an affidavit with appellee alleging that appellant discriminated against her based on her pregnancy. After an investigation, appellee concluded that there was probable cause to believe that

appellant had engaged in unlawful discriminatory practices, and issued a complaint against appellant for alleged unlawful discriminatory practices in violation of R.C. 4112.02(A).

On March 23, 1992, a public hearing was held, and the following testimony was presented. In June 1989, Graddy was employed by appellant as a waitress. Graddy testified that on November 19, 1989, she was approached by appellant's manager, Linda DiCamillo ("DiCamillo"), as she was preparing to clock out at the end of her shift. Graddy claimed that DiCamillo asked her if she was pregnant and stated that, "If you are pregnant, you won't be allowed to work here because we don't allow pregnant women to work in this restaurant. * * * It's company policy." Another employee, Sharon Paulchel, testified that she overheard DiCamillo's statements and corroborated Graddy's claims. DiCamillo testified that she did not have any conversations with Graddy about her pregnancy.

Graddy also testified that DiCamillo told her that she did not have to work her regularly scheduled shift on the following Monday because someone else was scheduled to work her hours. However, Graddy went to work that Monday, November 21, 1989, and took a voice activated tape recorder with her to record her conversations with DiCamillo. Appellee offered the tape recording and a transcript of the same into evidence at the hearing. Graddy identified the voices as her own and that of DiCamillo, and she testified that the tape had remained in her possession until the tape was given to appellee.

Appellant objected to the admission of the tape recording, arguing that the tape recording was incomplete and that appellee had failed to lay a proper foundation to ensure its authenticity. However, both the tape recording and its transcription were admitted into evidence. The transcription of the tape recording included the following colloquy:

"BY MRS. GRADDY: Okay. Anyway, I found out that I am pregnant.
" * * *

"BY (UNIDENTIFIED): * * * training people for you. And see, when they see when you're in that condition we don't issue you a bigger skirt. And you need one. And that's not good for the baby to be in that tight leather skirt and carrying trays and being on your feet. And we don't want to kill anybody's child. And that's what you'd be doing. This isn't the type of work that you should be doing when you're having a baby. * * *

"BY MRS. GRADDY: Well, I—it doesn't matter because it's * * *

"BY (UNIDENTIFIED): It matters to me.
" * * *

"BY MRS. GRADDY: * * * I'm still capable of working.

"BY (UNIDENTIFIED): Because what if you get sick during the holidays and you can't come in. And you may. You don't know how you're going to act. * * * I can't protect your job to the end, and you may just up and quit any time.

"BY MRS. GRADDY: Well, I would give you notice * * *

"BY (UNIDENTIFIED): You're not going to be able to give me notice if you're sick. * * *

" * * * *

"BY (UNIDENTIFIED): * * * Well, with the baby it's a different condition because you may get sick every morning, and you may be bedridden. * * * You don't know what your condition's going to be. So you got to understand. I wouldn't—you know—wait till you have your baby and then come back and reapply, you know, if your planning on working * * *. Right now I've got the girls that can work the hours. That's why I can't protect your hours if you can't work for me. * * *

" * * * *

"BY (UNIDENTIFIED): I [sic] (inaudible) fall down on that floor you're jeopardizing your baby, which is very dangerous. You're making that decision for that baby. And that's not fair. * * * (inaudible) That's why some people don't like to tell me. And one girl she lied right to my face, that she wasn't. And then she just didn't show up that weekend. And I didn't have * * *

"BY MRS. GRADDY: See, I won't do anything like that.

" * * * *

"BY (UNIDENTIFIED): It's not me. It's just the company rule, and that's * * *

"BY MRS. GRADDY: Okay. I'm just going to go ahead and take all my stuff out here, then. Okay?

" * * * *

"BY MRS. GRADDY: You don't want me to come back anymore?

"BY (UNIDENTIFIED): No, I * * *."

DiCamillo testified that the voice on the tape was not her own. DiCamillo also testified that Graddy had a attendance problem during the last three months of her employment, but that Graddy had not been disciplined for her attendance. Graddy's work schedules reflected that throughout her employment history with appellant, her hours varied from nineteen to thirty-nine per week with no obvious decline within the last three months. DiCamillo also testified that she told Graddy that her hours could not be held because she planned to take a week off starting on November 21, 1989, which was unauthorized. Graddy testified that

she obtained permission to take the week off prior to accepting employment with appellant.

DiCamillo testified that appellant provided a crib for its working mothers if needed, but that Graddy never requested such child care. Two former employees testified that appellant provided this type of child care for its employee's children, but one former employee stated that she never saw anyone use the child care.

On December 31, 1992, the hearing examiner concluded that Graddy's pregnancy was a factor in appellant's employment decision to discharge Graddy in violation of R.C. Chapter 4112. The hearing officer recommended that appellee issue a cease and desist order of all discriminatory practices, offer Graddy employment with wages reflecting continuous employment, and pay Graddy back wages.

On May 13, 1993, appellee issued its final order adopting the hearing officer's findings of facts and recommendations. Appellant appealed this order to the Ashtabula County Court of Common Pleas on June 11, 1993.

After a hearing, the court filed a judgment entry on April 8, 1994, which denied appellant's appeal. The court found that there was reliable, probative and substantial evidence on the record to substantiate the findings of appellee and the hearing examiner.

Appellant filed a timely appeal and now presents the following two assignments of error:

"(1) The judge erroneously abused his discretion by finding that the Ohio Civil Rights Commission's decision was supported by reliable, probative and substantial evidence.

"(2) The judge erroneously abused his discretion by failing to substitute his judgment for that of the decision of Ohio Civil Rights Commission when the record clearly disclosed that the decision was not supported by reliable, probative and substantial evidence."

At the outset, we note that although appellant presents two assignments of error, appellant fails to argue each assignment separately in its brief as required under App.R. 16(A). Additionally, appellant contends that there are two central issues for review, but fails to reference the assignment of error to which each issue relates as required under App.R. 16(A). Thus, we shall proceed in sequence and consider the two issues presented for review under appellant's first assignment of error.

R.C. 4112.02 provides in pertinent part that:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of * * * sex * * * to discharge without just cause, * * * or otherwise to discriminate against that person with respect to * * * any matter directly or indirectly related to employment."

R.C. 4112.01(B) states that:

" * * *" the terms 'because of sex' and 'on the basis of sex' include * * * because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes * * *."

R.C. 4112.06 further provides for judicial review of final orders of the commission in the court of common pleas. R.C. 4112.06(E) states:

"The findings of the commission as to the facts shall be conclusive if supported by reliable, probative, and substantial evidence on the record and such additional evidence as the court has admitted considered as a whole."

 Thus, a trial court must affirm a finding of discrimination under R.C. 4112.02(A), if the finding is supported by reliable, probative and substantial evidence on the entire record. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128; *Kent State Univ. v. Ohio Civ. Rights Comm.* (1989), 64 Ohio App.3d 427, 438, 581 N.E.2d 1135, 1142. Moreover, the trial court must give due deference to the administrative resolution of evidentiary conflicts. *Plumbers & Steamfitters Commt.* at 200, 20 O.O.3d at 205, 421 N.E.2d at 133; *Marvel Consultants, Inc. v. Ohio Civ. Rights Comm.* (1994), 93 Ohio App.3d 838, 841, 639 N.E.2d 1265, 1267.

 "The role of the appellate court is to determine whether the trial court abused its discretion in its consideration of the evidence involving an administrative appeal. * * *" *Scandinavian Health Spa, Inc. v. Ohio Civ. Rights Comm.* (1990), 64 Ohio App.3d 480, 488, 581 N.E.2d 1169, 1174, citing *In re Brantley* (1987), 34 Ohio App.3d 320, 324, 518 N.E.2d 602, 606. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142; *Kent State Univ.*, 64 Ohio App.3d at 439, 581 N.E.2d at 1143.

In the context of an employment discrimination pursuant to R.C. Chapter 4112, "reliable, probative, and substantial evidence" means evidence sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964. *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 609, 575 N.E.2d 1164, 1167; *Plumbers & Steamfitters Joint Apprenticeship Commt.*, 66 Ohio St.2d at 196, 20 O.O.3d at 202, 421 N.E.2d at 131. Further, a

finding of discrimination under R.C. 4112.02(A) requires application of the triparte analysis set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. *Plumbers & Steamfitters Joint Apprenticeship Commt.*, 66 Ohio St.2d at 197, 20 O.O.3d at 203, 421 N.E.2d at 131.

■ Under the first prong, the employee must prove a prima facie case of discrimination by a preponderance of the evidence. Thereafter, the burden shifts to the employer who must articulate some nondiscriminatory rationale for the action taken. Finally, the employee must demonstrate by a preponderance of the evidence that the employer's stated reason for the action was a pretext for impermissible discrimination. *Plumbers & Steamfitters Joint Apprenticeship Commt.*, 66 Ohio St.2d at 197–198, 20 O.O.3d at 203–204, 421 N.E.2d at 131–132; *Scandinavian Health Spa,* 64 Ohio App.3d at 488, 581 N.E.2d at 1174; *In re Brantley,* 34 Ohio App.3d at 322, 518 N.E.2d at 604.

In the first assignment of error, appellant asserts that the trial court abused its discretion in affirming appellee's finding of employment discrimination based upon Graddy's pregnancy. Appellant raises two issues.

■ Under the first issue, appellant asserts that the trial court erred in finding that the tape recording and its transcription were reliable, probative and substantial evidence, because the tape recording upon which Graddy's claim is based was incomplete and contained voices of unidentified individuals. Appellant also argues that appellee failed to lay a proper foundation to assure the tape's authenticity and failed to establish a proper chain of custody of the tape. Appellant relies on *State v. Davis* (1982), 4 Ohio App.3d 199, 4 OBR 303, 447 N.E.2d 139, for the proposition that an incomplete tape recording is inadmissible.

In *Davis,* the Ninth District Court of Appeals affirmed the trial court's exclusion of a tape recording because defendant and his counsel chose not to admit the tape in its entirety. The court relied on Evid.R. 106 and held that:

"In the interests of fundamental fairness, a court may require that an unavailable witness' tape recorded statements in their entirety, and not mere excerpts therefrom, be admitted into evidence. * * *" *Id.,* paragraph one of the syllabus.

■ As we read *Davis,* we find appellant's conclusive proposition to be misguided. While it is clear that a court may exclude a tape recording in its entirety rather than allow the admission of selected excerpts, *Davis* does not require a finding that *every* incomplete tape recording is inadmissible. A trial court must determine if the admission of any other part or another recorded statement is required in fairness to place the recording in proper context and to avert any misunderstanding or distortion caused by the use of a portion of a document. Evid.R. 106.

Moreover, in *State v. Gotsis* (1984), 13 Ohio App.3d 282, 13 OBR 346, 469 N.E.2d 548, the Ninth District Court of Appeals held that:

"It is not an abuse of discretion for the trial court to admit into evidence tape recordings containing inaudible portions, when their authenticity, accuracy and trustworthiness are established by extensive, uncontradicted testimony as to the recording and custody of the tapes and the content of the conversations recorded." *Id.*, paragraph two of the syllabus.

In the case *sub judice*, a review of the tape recording and its transcription indicates that the recorded conversation between Graddy and DiCamillo was complete, but that some portions of the conversation were inaudible. Graddy testified that she recorded the conversation between DiCamillo and herself, that the tape admitted was a recording of that conversation, and that the tape remained in her custody until she gave it to appellee. Additionally, Graddy testified extensively as to the contents of the conversation recorded on the tape.

Appellant did not present any evidence to indicate that the tape recording had been altered in any way or that the tape recording was not what Graddy claimed it to be. Appellant had the opportunity to cross-examine Graddy about her testimony as well as the opportunity to offer its version of the inaudible portions or clarify any misunderstandings. Thus, under *Gotsis*, the tape recording and its transcription were properly authenticated and admitted into evidence.

In the second issue raised, appellant argues that the trial court erred in finding that there was reliable, probative and substantial evidence to support a R.C. 4112.02(A) discrimination claim. Appellant asserts that the hearing officer failed to consider the testimony of appellant's witnesses, who refuted Graddy's version regarding her discharge.

"It is universally accepted that the jury, or the trial court where there is no jury, is the sole judge of the credibility of witnesses and of what weight is to be given their testimony. * * * " *In re Disbarment of Lieberman* (1955), 163 Ohio St. 35, 38, 56 O.O. 23, 24, 125 N.E.2d 328, 330. An appellate court cannot substitute its judgment as to the credibility of the witnesses for that of the trier of fact. *Id.* at 39, 56 O.O. at 25, 125 N.E.2d at 330.

Here, the hearing examiner was the trier of fact, and she determined that Graddy's testimony was supported by documentary and other evidence and, thus, was more credible than DiCamillo's testimony, which testimony was contradicted and unsupported. Although, there is no reference to appellant's other witnesses' testimony, the credibility of those witnesses is also within the purview of the hearing examiner. In the absence of evidence to the contrary, this court must presume that the hearing examiner considered all the evidence before her. Thus,

the trial court properly declined to pass on the credibility issue and gave due deference to the hearing examiner's findings.

Accordingly, we find that the testimony and the evidence presented were sufficient to support a finding of discrimination based upon Graddy's pregnancy. Thus, the trial court did not abuse its discretion in finding that there was reliable, probative, and substantial evidence to support the order of appellee.

In the second assignment of error, appellant contends that the trial court abused its discretion in failing to substitute its judgment for that of appellee. However, as stated above, appellant failed to argue this assignment separately in its brief. Consequently, appellant's second assignment of error will not be addressed pursuant to App.R. 12(A)(2) and 16(A).

Based upon the foregoing, the trial court's judgment is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and NADER, J., concur.