**Jean M. PLOTNER, Plaintiff,**

v.

**SWANTON LOCAL BOARD OF EDUCATION, Defendant.**

**No. 3:98 CV 7743.**

United States District Court,
N.D. Ohio,
Western Division.

March 9, 2000.

Denise M. Heberle, Toledo, OH, for Jean M Plotner, plaintiff.

Ronald S. Moening, Sr., Robison, Curphey & O'Connell, Toledo, OH, for Swanton Local Board of Education, defendant.

Ronald S. Moening, Sr., (See above), for Charles C Knisley, individually and in his

official capacity as Superintendent of the Swanton Local Schools, defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This action is before the Court on the separate objections of both parties to the February 3, 2000 Report and Recommendation of the United States Magistrate, and on Defendants' second motion for summary judgment.

In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir.1981), and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings to which the parties object. For the following reasons, the Court will adopt the Magistrate's recommendation in part.

### BACKGROUND

Plaintiff Jean Plotner has been employed by Defendant Swanton Local Board of Education ("the Board") since 1986. Since 1989 her contract has provided that she is "to be employed as Secretary to the Superintendent until she resigns, elects to retire, is retired pursuant to law or board regulation, or until [her employment] contract is terminated or suspended" by a majority vote of the Board for good cause.

Defendant Charles C. Knisley was hired as Superintendent of the Swanton Local Schools in December, 1996. Plotner was Knisley's secretary from December, 1996 until February, 1998. Plotner alleges that Knisley engaged in a pattern of harassing her by, *inter alia,* making false statements and accusations, giving contradictory directives, berating her, falsifying documents in her control, sabotaging her work, interfering with her co-worker relationships, trying to convince her to quit, yelling at her, and changing job expectations daily.

Both sides agree that Plotner and Knisley did not get along. They disagree as to the cause of that contention. Defendants have presented affidavits from Knisley and his two predecessors, who state that Plotner was a problem employee who performed her job poorly and caused dissension in the office; Knisley says his complaints about Plotner's work were nothing more than legitimate criticism. Plaintiff has presented affidavits from nine female school board employees who state that Plotner was a good employee, and that Knisley characteristically harassed female employees and mistreated them in ways that he did not mistreat male employees.

On September 24, 1997, Plaintiff filed a complaint with the EEOC, claiming that Knisley was harassing her on the basis of her age and sex. She subsequently withdrew the age discrimination claim.

In August 1997, Plotner, at her request, had changed her duties from full-time secretarial to half-time secretarial and half-time communications and publications. During the fall of 1997, Plotner and Knisley discussed the possibility of transferring Plotner to a newly created full-time position as Director of Communication and Publications. On December 18, 1997, and again on February 10, 1998, Knisley informed Plotner that she would be given the full-time communication and publications position, and that the restructured position would be moved out of the central school board office to the high school testing center. Plotner was happy with the prospect of the new position, but did not want to move to the high school. She accused Knisley of trying to get rid of her.

On February 13, 1998, Plotner went on medical leave. She has not returned to work.

On March 3, 1998, Plotner filed a second charge of discrimination with the EEOC, claiming that Knisley retaliated against her for filing the first complaint by transferring her office to the high school.

Plaintiff filed this action on December 11, 1998. In Counts I and III of her complaint, she alleges sex discrimination in violation of Title VII of the Civil Rights Act of 1964, and the Ohio Civil Rights Act ("OCRA"). In Counts II and IV of her

complaint, she alleges retaliation in violation of Title VII and OCRA. In Count V, she alleges that Defendant Knisley is individually liable under state law for his acts of discrimination. In Count VI, she brings a claim for intentional infliction of emotional distress. In Counts VII and VIII, she brings claims against the Board for negligent hiring and retention of Knisley. In Count IX, she alleges that the Board violated the terms of her employment contract by unilaterally changing its terms. The case was referred to the United States Magistrate for pretrial supervision and Report and Recommendation.

Defendants filed a motion for summary judgment on Counts I–VIII of Plaintiff's complaint. The Magistrate recommended that Defendants' motion be denied as to Plaintiff's claims of sex harassment, and granted in all other respects. After entry of the Magistrate's Report and Recommendation, Defendants filed a second motion for summary judgment on Count IX of Plaintiff's complaint; that motion is unopposed.

Both sides have filed objections to the Magistrate's Report and Recommendation. The Court discusses the parties' contentions below.

### DISCUSSION

#### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

#### B. Counts I & III: Sex Discrimination

■ The Magistrate found that a triable issue of fact existed upon which a reasonable jury could conclude that Plaintiff had been subjected to unlawful discrimination on the basis of her sex. It is unlawful under federal law for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). Title VII does not permit individual liability for supervisors or managers; however, respondeat superior liability is incorporated within Title VII. *Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir.1997).

■ It is unlawful under Ohio law "[f]or any employer, because of the ... sex ... of any person ... to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev.Code § 4112.02(A). The Ohio Supreme Court has held that evidence sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964 is necessary before a violation of § 4112.02(A) can be shown. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981); *see also Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St.3d 607, 609–10, 575 N.E.2d 1164, 1167 (1991), *cert. denied*, 503 U.S. 906 112 S.Ct. 1263, 117 L.Ed.2d 491 (1992); *El Grande Steak House v. Ohio Civil Rights Comm'n*, 99 Ohio App.3d 557, 562, 651 N.E.2d 440, 444 (1994); *Twinsburg City Schools v. Ohio Civil Rights Comm'n*, 86 Ohio App.3d 527, 529, 621 N.E.2d 591, 593 (1993). Accordingly, the Court uses the same analysis to address Plaintiff's federal and state discrimination claims. However, unlike Title VII, OCRA encompasses individual liability for supervisors and managers. *Genaro v. Central Transport, Inc.*, 84 Ohio St.3d 293, 703 N.E.2d 782 (1999).

■ Plaintiff alleges that she was subjected to a hostile environment because of Knisley's harassment. A hostile work environment exists whenever "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)). Conduct that is "merely offensive" but "not severe or pervasive enough to create an objectively hostile or abusive work environment" does not violate Title VII, but the plaintiff need

not show that the conduct of which he complains was of such severity that it would be psychologically injurious to a reasonable person. *Id.* at 21–22, 114 S.Ct. at 370–71. The Supreme Court has set forth a nonexclusive list of factors for Courts to use in determining whether a work environment is hostile or abusive. These factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. at 371.

■ Defendants have objected to the Magistrate's determination that a reasonable jury could find for Plaintiff on her sex harassment claim. Defendants argue first that Plotner has not demonstrated a triable issue of fact on whether Knisley's conduct was based on her sex. The Court disagrees. Plotner has submitted sworn affidavits from nine female school board employees who have stated that Knisley habitually belittled and mistreated female employees, while male employees did not receive that same treatment. That constitutes sufficient evidence from which a jury could find that Knisley's conduct was based on Plotner's sex.

Second, Defendants argue that no jury could find the alleged harassment to be objectively sufficiently severe or pervasive enough to alter the conditions of Plotner's employment. The Court disagrees. Plotner has alleged acts of harassment that occurred on an almost daily basis for over a year. The alleged harassment covered a wide range of behaviors, from sabotaging Plotner's computer equipment, to taking Plotner's building keys, to yelling and intimidation. If Plotner's testimony is believed, many of Knisley's actions were directly aimed at making it impossible for Plotner to do her job. On that evidence, a reasonable jury could find that the harassment objectively altered the conditions of Plotner's employment.

The Court will adopt the Magistrate's determination that a reasonable jury could find for Plotner on her sex harassment claims.

### C. Counts II & IV: Retaliation

The Magistrate found that no triable issue of fact existed upon which a reasonable jury could conclude that Plaintiff had been subjected to unlawful retaliation for participating in a protected activity under Title VII and OCRA, and recommended that summary judgment be entered for Defendants on that claim.

■ Title VII prohibits an employer from discriminating against any employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). OCRA provides the same. Ohio Rev.Code § 4112.02(I). A plaintiff establishes a prima facie case of retaliation by showing:

(1) that she engaged in an activity protected by Title VII;

(2) that the defendant knew of the plaintiff's exercise of her civil rights;

(3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and

(4) that there was a causal connection between the protected activity and the adverse employment action.

*Harrison v. Metro. Gov't of Nashville & Davidson County, Tenn.,* 80 F.3d 1107, 1118 (6th Cir.1996); *Christopher v. Stouder Memorial Hosp.,* 936 F.2d 870, 877 (6th Cir.1991); *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987). There is no dispute in this case that Plotner satisfied the first two prongs of that test. The Magistrate found that a reasonable jury could determine Plotner had been subjected to an adverse employment action. The Magistrate concluded, however, that Plotner could not satisfy the fourth prong of the test, because she could not demonstrate a causal connection between the protected activity and the adverse employment action. She therefore recommended that Defendants' motion for summary judgment be granted on Plotner's retaliation claim.

■ Plaintiff has objected to that determination. She argues that Defendants' proffered reasons for the transfer have changed, and are not credible. She offers no affirmative evidence of a nexus between her filing the EEOC complaint and the proposed transfer to the high school testing room. On these facts, Plaintiff has not created a triable issue of fact upon which a jury could find in her favor on her retaliation claim. First, the Court disagrees with Plotner's allegation that Defendants have changed their reasons for moving Plotner to the high school; Defendants have consistently represented that they felt the Director of Communication and Publications could function better at the high school. Second, even if Defendants had offered multiple reasons for moving Plotner when her job duties changed, she must do more than merely to assert that a jury could disbelieve Defendants; she must adduce affirmative evidence that there was a nexus between her EEOC complaint and the transfer. She has not done so.

Furthermore, this Court has grave doubts as to whether the proposed transfer constituted an "adverse employment action" at all, although that issue is not before the Court on the parties' objections to the Magistrate's Report and Recommendation. Determining whether an employee has suffered an adverse action necessarily requires a case-by-case inquiry. On a motion for summary judgment, the Court must consider the combined effects of the Defendants' alleged conduct in totality. It is not disputed that Plaintiff was not discharged or demoted, and her income was not reduced. It is not disputed that Plaintiff did not object to the change in job duties. The change in location was *de minimis;* the Court takes judicial notice that Swanton is not a large town and

the buildings in issue are located less than half a mile apart. The mere fact of strained relations with a supervisor whom Plotner had never liked is insufficient to sustain a claim of retaliation.

The Court will adopt the Magistrate's recommendation that Plotner's retaliation claims be dismissed.

*D. Count V: Knisley's Individual Liability*

■ The Magistrate recommended that Plaintiff's claim against Knisley in his individual capacity remain in this case for further disposition. A supervisor can be liable under OCRA for violation of OCRA. *Genaro v. Central Transport, Inc.,* 84 Ohio St.3d 293, 703 N.E.2d 782 (1999). As discussed above, a reasonable jury could return a verdict for Plotner on her sex harassment claims. Accordingly, the Court will adopt the Magistrate's recommendation that Plotner's claim against Knisley in his individual capacity remain in this case.

*E. Count VI: Intentional Infliction of Emotional Distress*

The Magistrate found that no triable issue of fact existed upon which a reasonable jury could find Defendants liable for intentional infliction of emotional distress, and recommended that summary judgment be entered for Defendants on that claim.

■ There are four elements to a claim for intentional infliction of emotional distress:

(1) that the actor intended to cause emotional distress or knew or should have known that his actions would result in serious emotional distress to the plaintiff;

(2) that the conduct complained of has been so outrageous in character and extreme in degree as to go beyond all bounds of decency;

(3) that the conduct proximately caused the plaintiff's injury; and

(4) that the mental anguish suffered by the plaintiff is serious and of a nature that no reasonable person could be expected to endure it.

*Ashcroft v. Mt. Sinai Medical Ctr.,* 68 Ohio App.3d 359, 366, 588 N.E.2d 280, 284 (1990); *see also Yeager v. Local Union 20 of Teamsters,* 6 Ohio St.3d 369, 374–75, 453 N.E.2d 666, 671 (1983). A plaintiff can prevail on such a claim only by demonstrating that the defendant has engaged in conduct which has been:

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

*Yeager v. Local Union 20,* 6 Ohio St.3d 369, 375, 453 N.E.2d 666, 671 (1983) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); *see also Russ v. TRW, Inc.,* 59 Ohio St.3d 42, 48, 570 N.E.2d 1076, 1083 (1991). The Magistrate concluded that Knisley's conduct did not rise to the level of severity necessary to support a finding of intentional infliction of emotional distress, and recommended that Defendants' motion for summary judgment be granted on Plotner's intentional infliction of emotional distress claim.

Plaintiff has objected to that determination. She argues that Knisley's pattern of

conduct constituted "systemic torture." The Court disagrees. Viewing the evidence in the light most favorable to Plotner, she has alleged acts that are definitely inconsiderate and unkind, but it is not proper for the Court to intervene in every case where an employee is offended by an inconsiderate supervisor. The Court will adopt the Magistrate's recommendation that Plotner's retaliation claims be dismissed.

### F. Counts VII & VIII: Negligent Hiring and Retention

The Magistrate found that no triable issue of fact existed upon which a reasonable jury could find Defendants liable for negligent hiring or retention, and recommended that summary judgment be entered for Defendants on those claims.

 Ohio recognizes the tort of negligent hiring and/or retention. In order to prevail on such a claim, the employee must demonstrate:

(1) the existence of an employment relationship;

(2) the employee's incompetence;

(3) the employer's actual or constructive knowledge of such incompetence;

(4) the employee's act or omission causing the plaintiff's injuries; and

(5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries.

*Staten v. Ohio Exterminating Co., Inc.*, 123 Ohio App.3d 526, 529, 704 N.E.2d 621, 623 (1997). In this case, as in most negligent hiring and/or retention cases, the primary issue is whether the employer knew or should have known of the employee's criminal or tortious propensities. *Stephens v. A–Able Rents Co.*, 101 Ohio App.3d 20, 26, 654 N.E.2d 1315, 1319 (1995). The Magistrate found that Plotner had failed to demonstrate evidence upon which a jury could base a determination that Knisley might be a sexual harasser, and recommended that summary judgment

be entered for Defendants on Plaintiff's negligent hiring and retention claims.

 Plaintiff has objected to that determination. In support, she points to the affidavit of teacher Louanne Thompson, in which Thompson describes a meeting she had with then—President of the Board Walter Lange after one incident when Knisley verbally berated Plotner:

I met with Barbara Schmidt, the only female Board member, and Mr. Lange, at Ms. Schmidt's home. I repeated everything I had witnessed concerning Dr. Knisley's mistreatment of me, Jean and [my secretary] Ms. Nagel.

Barbara Schmidt told me that she believed everything I was saying was true because he treated her the same way. She said, "He treats all women like dirt."

Mr. Lange told me that before hiring Dr. Knisley, he had gone to Vermont to interview people who knew Knisley there. He told me that he was beside himself that these things were happening and that he should have paid attention to the people in Vermont who told him that Dr. Knisley had trouble working with women.

(Thompson Aff. ¶¶ 13–15.) Viewing the Thompson affidavit in the light most favorable to Plotner, a triable issue of fact exists upon which a reasonable jury could find that the Board was on notice of Knisley's harassing conduct, both before his hire and during his tenure.

Defendants do not deny that those facts, if proven, would justify a finding in Plaintiff's favor on her negligent hiring and retention claim. Rather, they argue that the Court should disregard Thompson's statement as inadmissible "double hearsay." Defendants' argument lacks merit.

 The first issue the Court must address in evaluating Defendants' claim that the Thompson affidavit contains inadmissible hearsay is whether the unspecified statements of "the people in Vermont who told [Lange] that Dr. Knisley had

trouble working with women" constitute inadmissible hearsay. They do not. Hearsay is an extrajudicial statement that is "offered in evidence to prove the truth of the matter asserted.". Fed.R.Evid. 801(c). The unspecified statements of Knisley's former co-workers in Vermont are not offered in this instance to prove the truth of the matter asserted; they are offered to show that the Board was on notice of Knisley's tendencies. Those statements are relevant because they placed the Board on notice that further investigation into Knisley's treatment of women was called for. A reasonable jury could find the Board's failure to investigate to be negligent. Since the unspecified Vermonters' statements are not hearsay at all in this context, the statements are not inadmissible on that ground

■ The next issue the Court must address is whether Lange's statement to Thompson constitutes inadmissible hearsay. A statement made by a party's agent concerning a matter within the scope of the agency and made during the existence of the relationship is not hearsay. Fed.R.Evid. 801(d)(2). Lange was the President of the Board at the time he spoke, and his assertion concerned a matter within the scope of his agency. Therefore, it is not hearsay at all. The statements are not inadmissible on that ground.

Furthermore, even if the Thompson affidavit contained inadmissible hearsay—which it does not—that circumstance would not be dispositive of the matter. The focus at the summary judgment stage is not on the form of the evidence as it is presented in the affidavit, but rather, whether at trial the matter stated in the affidavit would constitute admissible evidence. As long as it is clear at the time of the summary judgment motion that the evidence subsequently could be put into admissible form at trial, little would be gained by requiring the nonmovant to take the time and effort to restructure the evidence at the summary judgment stage. 11 James Wm. Moore, et al., Moore's Federal

Practice § 56.14[1][d] (3d ed.1997); Edward Brunet, Summary Judgment Materials, 147 F.R.D. 647, 656–67 (1993). It is clear from the form and content of Thompson's affidavit that Lange himself could have been questioned on the matter of whether he had notice that Knisley had trouble working with women, and that testimony would have been admissible.

The Court agrees with Plotner's objection to the Magistrate's recommendation on Plotner's negligent hiring and retention claims. Those claims will remain in this case for further disposition.

### G. Count IX: Breach of Contract

■ Defendants inadvertently neglected to move for summary judgment on Plotner's breach of contract claim while the case was pending before the Magistrate. They have now filed a separate motion for summary judgment on that count, arguing that they cannot be liable for breach of contract because the Board never terminated Plotner's employment. Plotner has not filed opposition to that motion. The Court has reviewed Defendants' motion and finds that it is well taken. Accordingly, the Court will enter summary judgment for Defendants on Plaintiff's breach of contract claim.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgments are granted in part and denied in part. Defendants' motions are granted on Counts II, VI, VI and IX of Plaintiff's complaint. Defendants' motions are denied on Counts I, III, V, VII, and VIII of Plaintiff's complaint.

IT IS SO ORDERED.