OPINION
{¶ 1} Defendant-Appellant, James A. Orwick, appeals a judgment of the Hancock County Court of Common Pleas, sentencing him upon his convictions for one count of gross sexual imposition and two counts of rape. On appeal, Orwick contends that the trial court erred in ordering that his sentences be served consecutively, that the trial court erred in considering facts not found by the jury during sentencing in violation ofBlakely v. Washington, (2004), 542 U.S. 296, 124 S.Ct. 2531, that the trial court erred in allowing the jury to view transcripts of a telephone conversation that were not prepared by an objective third party, that the trial court erred in not allowing Orwick to inquire into whether the victims, his wife and former wife had an STD, that he was denied his constitutional right to effective assistance of legal counsel, that the trial court erred in denying his motion for a mistrial after one of the State's witnesses mentioned polygraph testing of the victims and that the trial court erred in admitting the testimony of a social worker. Based on the following, we affirm the judgment of the trial court.
 {¶ 2} Orwick and his wife, Lisa, married in 1987. Both Orwick and Lisa had been married previously, and both had children from their prior marriages. Lisa had two daughters, Mendi and Mandi, and a son from her previous marriage. Orwick had one son, Greg. In addition, Orwick and Lisa had two more children born of issue to their marriage, Chad and Charlene.
 {¶ 3} In October of 2001, Lisa contacted the Hancock County Sheriff's department about possible sex abuse of her children. Prior to contacting the sheriff's department, Lisa had been told by her and Orwick's daughter, Charlene, that Orwick had tried to touch her inappropriately. Following Charlene's allegations, Lisa spoke with her daughter Mandi, who also admitted that Orwick had touched her inappropriately. Finally, Lisa spoke with her oldest daughter Mendi, who told Lisa that Orwick had sexually abused her for over five years.
 {¶ 4} Subsequently, in November of 2001, Orwick was indicted on one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), a felony of the fourth degree, thirteen counts of rape in violation of R.C. 2907.02(A)(2), felonies of the first degree, and fifteen counts of sexual battery in violation of R.C. 2907.03(A)(5), felonies of the fifth degree. Of the twenty-nine counts charged, counts one through twenty-eight dealt with Mendi and count twenty-nine dealt with Mandi.
 {¶ 5} In July of 2002, the State subpoenaed the Blanchard Valley Regional Health Center, requesting all documents relating to counseling sessions with Orwick. Orwick objected to the subpoena, arguing that the documents were privileged communications protected from disclosure pursuant to R.C. 2317.02(G)(1). Following an in camera inspection of the documents provided by Blanchard Valley Regional Health Center, the trial court ruled that only one report dated March 8, 2002, authored by Daniel King, a licensed independent social worker, could be disclosed and was discoverable under R.C. 2917.02(G)(1)(a). The trial court based its decision on a finding that the report contained indications of present or past abuse.
 {¶ 6} Following the trial court's ruling, Orwick and Blanchard Valley Regional Health Center instituted an interlocutory appeal, challenging the trial court's decision to allow the March 8, 2002 report to be discoverable. In State v. Orwick, 153 Ohio App.3d 65, 2003-Ohio-2682
("Orwick I"), this Court upheld the trial court's decision allowing the March 8, 2002 report to be discovered.
 {¶ 7} In May of 2004, a trial was held on the above indictment. At the trial, the State presented the testimony of Tom Blunk and Charles Insley, both of the Hancock County Sheriff's Department, Lisa Orwick, Mendi and Mandi, Greg Orwick and King. Orwick presented no witnesses or exhibits on his own behalf.
 {¶ 8} Following the trial, the jury returned verdicts finding Orwick guilty of count one, gross sexual imposition, as well as counts two and three, rape. The jury found Orwick not guilty on the remaining twenty-six counts of the indictment.
 {¶ 9} Subsequently, Orwick was sentenced upon his convictions. The trial court sentenced Orwick to eighteen months on count one and eight years each for counts two and three. Finally, the trial court ordered that Orwick's sentences be served consecutively. It is from this judgment Orwick appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED WHEN IT IMPOSED CONSECUTIVE PRISON TERMS ONDEFENDANT-APPELLANT SINCE, BECAUSE (sic.) IT FOUND THATDEFENDANT-APPELLANT WAS NOT LIKELY TO COMMIT FUTURE CRIMES PER R.C.2912(E), ITS RULING CONTRAVENED A REQUISITE PROVISION OF R.C. 2929.14(E)(4)THAT AN OFFENDER MAY BE SENTENCED TO CONSECUTIVE TERMS IF SUCH "SENTENCESARE NOT DISPROPORTIONATE . . . TO THE DANGER [HE] POSES TO THE PUBLIC."
 Assignment of Error No. II THE TRIAL COURT ERRED WHEN IT IMPOSED NON-MINIMUM SENTENCES,CONSECUTIVE SENTENCES, AND A SEXUAL PREDATOR CLASSIFICATION ONDEFENDANT-APPELLANT THAT WERE BASED ON FACTS NOT FOUND BY THE JURY ORADMITTED BY HIM IN CONTRAVENTION OF BLAKELY v. WASHINGTON, THEREBYBREACHING HIS SIXTH AMENDMENT RIGHT TO A TRIAL BY JURY.
 Assignment of Error No. III THE TRIAL COURT ERRED IN USING AT DEFENDANT-APPELLANT'S TRIAL ATRANSCRIPT OF A RECORDED TELEPHONE CONVERSATION THAT WAS NOT PREPARED BYAN OBJECTIVE THIRD PARTY, THAT WAS NOT PROVIDED HIS COUNSEL PRIOR TOTRIAL, AND THAT WAS MADE AVAILABLE TO THE JURY DURING ITS DELIBERATIONS.
 Assignment of Error No IV THE TRIAL COURT ERRED IN PROHIBITING DEFENDANT-APPELLANT FROM INQUIRINGINTO THE ISSUE OF WHETHER HIS STEPDAUGHTERS, WIFE, AND FORMER SPOUSE HADAN STD SUCH AS HUMAN PAPILLON VIRUS (HPV), INASMUCH AS R.C. 2907.02(D)PERMITS EVIDENCE OF DISEASE ADMISSIBLE WHERE IT IS PROBATIVE AND NOTINFLAMMATORY.
 Assignment of Error No. V APPELLANT WAS PREJUDICIALLY DEPRIVED OF HIS RIGHT TO DUE PROCESS, AFAIR TRIAL, AND EFFECTIVE ASSISTANCE OF LEGAL COUNSEL AS GUARENTEEDWITHIN THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATESCONSTITUION, ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION, AND R.C.2953.20 BY HIS COUNSEL'S FAILURE TO INTRODUCE EXCULPATORY EVIDENCE ATTRIAL WHICH CONSTITUTED A SUBSTANTIAL VIOLATION OF ONE OF DEFENSECOUNSEL'S ESSENTIAL DUTIES TO HIS CLIENT.
 Assignment of Error No. VI THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION FORMISTRIAL AFTER A LEAD PROSECUTION WITNESS TESTIFIED AS TO THE POLYGRAPHTESTING OF THE ALLEGED VICTIMS.
 Assignment of Error No. VII THE TRIAL COURT ERRED NOT ONLY WHEN IT PERMITTED A LICENSED SOCIALWORKER'S REPORT CONCERNING A CONFIDENTIAL COMMUNICATION BY HIS CLIENT,THE DEFENDANT-APPELLANT, TO BE USED AT TRIAL, BUT ALSO WHEN IT ADMITTEDINTO EVIDENCE THE TESTIMONY OF THE SOCIAL WORKER WHO HAD AUTHORED THENOTE SUBSEQUENT TO THE SESSION, SINCE NEITHER THE CLIENT'S REPORTEDCOMMUNICATION NOR ANY COUNSELOR'S ADVICE WITHIN THAT REPORT SUFFICIENTLYSHOW A FACUAL BASIS ADEQUATE TO SUPPORT A GOOD FAITH BELIEF THAT EITHERTHE COMMUNICATION OR THE ADVICE INDICATED A CLEAR AND PRESENT DANGER THATWOULD CONSTITUTE AN EXCEPTION ALLOWED UNDER THE TERMS OF R.C.2917.02(G)(1)(A).
 Assignment of Error No. I {¶ 10} In the first assignment of error, Orwick asserts that the trial court erred in imposing consecutive sentences.
 {¶ 11} The structure of Ohio felony sentencing law provides that the trial court's findings under R.C. 2929.03, 2929.04, 2929.11, 2929.12,2929.13, and 2929.14, determine a particular sentence. State v. Martin
(1999), 136 Ohio App.3d 355, 362. Compliance with those sentencing statutes is required. Id. Accordingly, the trial court must set forth the statutorily mandated findings and, when necessary, articulate on the record the particular reasons for making those findings. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, at paragraph one and two of the syllabus.
 {¶ 12} An appellate court may modify a trial court's sentence only if it clearly and convincingly finds either (1) that the record does not support the sentencing court's findings or (2) that the sentence is contrary to the law. R.C. 2953.08(G)(2); see, also, Martin,136 Ohio App.3d at 361. Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Statev. Schiebel (1990), 55 Ohio St.3d 71, 74, citing Cross v. Ledford
(1954), 161 Ohio St. 469, 477. It requires more evidence than does a finding by a preponderance of the evidence, but it does not rise to the level of a finding beyond a reasonable doubt. Id. An appellate court should not, however, simply substitute its judgment for that of the trial court, as the trial court is "clearly in the better position to judge the defendant's dangerousness and to ascertain the effect of the crimes on the victims." State v. Jones (2001), 93 Ohio St.3d 391, 400.
 {¶ 13} R.C. 2929.14(E)(4) sets out the findings that are required for the imposition of consecutive sentences. The first required finding is "that the consecutive service is necessary to protect the public from future crime or to punish the offender." The second finding is that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender posed to the public." R.C. 2929.14(E)(4). Finally, the trial court must make one of the following findings:
(a) The offender committed the multiple offenses while the offender wasawaiting trial or sentencing, was under a sanction imposed pursuant tosection 2929.16, 2929.17, or 2929.18 of the Revised Code, or was underpost-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusualthat no single prison term for any of the offenses committed as part of asingle course of conduct adequately reflects the seriousness of theoffender's conduct.
 (c) The offender's history of criminal conduct demonstrates thatconsecutive sentences are necessary to protect the public from futurecrime by the offender. Id.
 {¶ 14} In addition to making the requisite findings under R.C.2929.14(E)(4), the trial court must also comply with R.C. 2929.19(B)(2)(c) when imposing consecutive sentences. R.C. 2929.19(B)(2)(c) states:
(2) The court shall impose a sentence and shall make a findingthat gives its reasons for selecting the sentence imposed in anyof the following circumstances: * * *
 (c) It imposes consecutive sentences under 2929.14 of the RevisedCode, it reasons for imposing the consecutive sentences.
 {¶ 15} Finally, the Ohio Supreme Court has now explicitly held that "when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." Comer, 99 Ohio St.3d at para. one of syllabus. Thus, a trial court is required to make the above findings on the record.
 {¶ 16} In the instant case, the trial court determined that consecutive service was necessary to protect the public from future crime, that consecutive sentences were not disproportionate to the seriousness of Orwick's conduct and the danger he posed to the public and, finally, that the harm caused by Orwick was so great or unusual that no single prison term for any of the offenses would adequately reflect the seriousness of Orwick's conduct.
 {¶ 17} Specifically, the trial court made the following findings on the record:
The Court finds, based upon the testimony heard at trial, as well asother evidence that has come today in the context of the proceeding, thatconsecutive sentences are necessary to protect the public from futurecrime, and more importantly, are necessary in this case to punish theDefendant. They're not disproportionate to the seriousness of theDefendant's conduct that went on in this case unabated for approximatelyfive years. They're certainly not disproportionate to the danger theDefendant possess to the public in the context of the conduct that'sbefore the Court.
 The Court finds in this particular case that the harm caused by theDefendant was so great or unusual, that no single prison term for any ofthe offenses committed would adequately reflect the seriousness of theDefendant's conduct as viewed by the Court. In addition, the consecutivesentences are necessary to protect the public from future crime by theDefendant.
 {¶ 18} After reviewing the entire record, we find that the trial court considered all of the required statutory factors, made all of the required findings necessary to impose consecutive sentences at the sentencing hearing and stated its reasoning for making such findings at the sentencing hearing. We also find that the record supports these findings.
 {¶ 19} Accordingly, the first assignment of error is overruled.
 Assignment of Error No II {¶ 20} In the second assignment of error, Orwick contends that the trial court violated his right to a trial by jury when it imposed a prison term upon him based on findings not admitted by him or submitted to a jury. Orwick relies upon the holding in Blakely for this proposition. This Court has previously ruled that the holding in Blakely does not apply to Ohio's sentencing scheme. State v. Trubee, 3rd Dist. No. 9-03-65, 2005-Ohio-552, at ¶ 16-38. Therefore, Orwick's second assignment of error overruled.
 Assignment of Error No. III {¶ 21} In the third assignment of error, Orwick asserts that the trial court erred in allowing the use of transcripts of a telephone conversation, which were prepared by Lisa Orwick and Dru Bond, a victim's advocate at the prosecutor's office. Specifically, Orwick takes issue with the fact that the transcripts were not prepared by an objective third party and that the jury was supplied, both during trial and during deliberations, with such transcripts while listening to the recording of the telephone conversation. Orwick does not, however, assert that the transcript included any inaccuracies.
 {¶ 22} At the outset of Orwick's argument, he contends that the trial court erred in allowing the tapes to be played at trial. Specifically, Orwick asserts that because what was played at trial was an enhanced CD of the tapes and not the original tapes, the tapes should have been excluded.
 {¶ 23} Tape recordings themselves are the best evidence of their contents, not any transcript prepared from them. State v. Holmes (1987),36 Ohio App.3d 44, 49. In State v. Rogan (1994), 94 Ohio App.3d 140,148, the Second District Court of Appeals held that it would not favor the admission of a transcript without first duly admitting the tape recording from which the transcript was allegedly made.
 {¶ 24} The approved procedure in Ohio for determining the admissibility of a tape recording has been set forth in State v. Gotsis
(1984), 13 Ohio App.3d 282, 283, which held:
In order to be admissible, audio recordings must be authentic, accurateand trustworthy. Admission into evidence of tape recordings containinginaudible portions is a matter within the sound discretion of the trialcourt. In determining whether to admit tape recordings, the trial courtmust assess whether the unintelligible portions are so substantial as torender the recordings as a whole untrustworthy.
(Citations omitted.)
 {¶ 25} Upon review of the record, we find that Orwick's initial argument must be rejected, because he failed to object to the trial court's order that the tapes be enhanced. While what was played at trial was not the original tape recording of the phone conversation, the State properly had Lisa Orwick identify that the voices on the played CD were that of her and Orwick. Accordingly, the trial court did not abuse its discretion in allowing the enhanced CD to be played at trial.
 {¶ 26} Turning to the issue of the transcript, upon review of the record, we must first note that the transcripts were used solely by the jury as listening aids. The transcripts were never admitted into evidence, and the jury was only allowed to see the transcripts while the tapes were being played. While the jurors were provided with the transcripts a second time, during their deliberation, the transcripts were again only used while they were again listening to the tapes. The trial record clearly establishes that the transcripts were passed out moments before the tapes were played and collected immediately after the tapes finished. Thus, while Orwick tries to argue that the trial court erred in allowing the jury to use the transcripts during deliberations, he misrepresents the use of the transcripts at trial.
 {¶ 27} Furthermore, the Rogan Court dealt with this issue extensively. In Rogan the court held that "[w]here there are no `material differences' between a tape admitted into evidence and a transcript given to the jury as a listening aid, there is no prejudicial error."94 Ohio App.3d at 153, citing Holmes, 36 Ohio App.3d at 50. TheRogan court came to this holding in light of the Ohio Supreme Court caseState v. Waddy (1992), 63 Ohio St.3d 424, superseded on other grounds inState v. Smith (1997), 80 Ohio St.3d 89. In Waddy, the Supreme Court found that a trial court had erred in allowing the jury to use transcripts of taped conversations as listening aids while the tapes were being played. Id. at 445-446. While Rogan acknowledged the Supreme Court's finding that such conduct was error in Waddy, the Rogan court noted that in Waddy the defendant had conceded that the transcripts used at trial were inaccurate. Rogan, 94 Ohio App.3d at 153. Accordingly, finding that there were no inaccuracies between the tapes played and transcripts provided, the Rogan court held that there was no prejudicial error when the transcripts were used as a listening aid. Id.
 {¶ 28} Accordingly, because we can find no material differences between the CD's admitted and the transcripts given to the jury as listening aids, there is no prejudicial error. Id. See, also, Waddy,63 Ohio St.3d at 445. Finally, Orwick thoroughly cross-examined Lisa on how she had recorded the telephone conversations, how she had taped those conversations on to audio tapes and how she had transcribed the tapes. Accordingly, we find that the third assignment of error is meritless.
 Assignment of Error No. IV {¶ 29} In the fourth assignment of error, Orwick asserts that the trial court erred in prohibiting him from inquiring into whether the victims, his wife and his former wife had Human Papillon Virus ("HPV"), a sexually transmitted disease.
 {¶ 30} The State of Ohio's rape shield law, R.C. 2907.02(D), prohibits "[e]vidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity * * * * "except for certain limited purposes." The statute was enacted to fulfill several state goals: "First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, the statute is intended to aid in the truth-finding process." State v. Gardner (1979), 59 Ohio St.2d 14, 17-18.
 {¶ 31} It is within the sound discretion of a trial court to determine the relevancy of evidence and apply R.C. 2907.02(D) to best meet the purpose behind the statute. State v. Williams (1986), 21 Ohio St.3d 33, 40, citing State v. Leslie (1984), 14 Ohio App.2d 343, 346. Notwithstanding, evidence that is generally excluded under the rape shield law is admissible to show the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender. R.C.2907.02(D). However, even this evidence is only admissible "to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." Id.
 {¶ 32} To assess the probative value of excluded evidence, it is necessary to examine its relevance to the issues which it is offered to prove. Gardner, 59 Ohio St.2d at 18. Orwick contends that he should have been allowed to inquire at trial into whether the victims, his wife, Lisa, and his former wife had HPV. Specifically, he argues that he should have been able to inquire because if he were able to show that his wife and former wife both had HPV, but the victims did not, then such evidence would be probative to his case. The crux of Orwick's theory is centered on the fact that he himself had given both his wife, Lisa, as well as his former wife HPV. Thus, according to Orwick, if true, the victims' failure to have the disease would prove that he could not have had sexual intercourse with them.
 {¶ 33} Prior to trial, the trial court held a rape shield hearing. At the hearing, both Orwick's wife, Lisa, as well as his former wife testified. At the hearing, Orwick's former wife testified that she may have told the State that Orwick did give her a sexually transmitted disease; however, she went on to state that she was never sure if she ever had a sexually transmitted disease. Basically, Orwick's former wife asserted that in 1986 or 1987 she had an abnormal pap smear test; however, she stated that she has not had any problems since 1989 and that she was never diagnosed with a sexually transmitted disease.
 {¶ 34} Orwick's wife, Lisa, also testified. According to Lisa, sometime before 1989 she also had an abnormal pap smear test. She stated that she had been diagnosed with the sexually transmitted disease of HPV. She stated that she had talked to Orwick's former wife about this at the time of the abnormal test and that his former wife had told her that she had also had an abnormal pap smear test.
 {¶ 35} Garth Brown, Lisa's attorney, testified that in January of 2004, he had a conversation with Orwick's former wife and that she had told him that she had a sexually transmitted disease, which he stated she told him she had contracted from Orwick. He also stated that Orwick's former wife had stated she would not cooperate if she were called to testify. Finally, Dana Dunbar, an investigator for the prosecutor's office, testified. According to Dunbar, Orwick's former wife had also told him that she did contract the sexually transmitted disease of HIV,
not HPV, from Orwick.
 {¶ 36} Following the rape shield hearing, the trial court found that the evidence could only be admitted at trial if material to a fact at issue. Specifically, the trial court found that the evidence of a sexually transmitted disease is not barred under R.C. 2907.02(D); however, the trial court noted that the evidence was inflammatory and that the prejudicial nature does not outweigh its probative value. The trial court went on to note the discrepancies in the witnesses' stories and that the trial court was not going to allow the evidence in the context of the defense case. Specifically, the trial court noted:
Does that mean that, I think some of these issues need to be initiallyraised by the Defendant himself and then we have at that point some kindof foundational requirement by way of some kind of scientific testimony,it's pretty clear to me we are talking about HPV, Investigator Dunbarthink (sic.) it's HIV, that means some doctor is going to have to tell mewhat we are dealing with here. And can it be passed between humans and Ithink there has to be some kind of scientific foundational approach tothis thing also.
(May 24, 2004 hearing Tr. p. 109.)
 {¶ 37} At trial, Orwick attempted to question one of the victims as to whether she had a sexually transmitted disease. At that point, the trial court made the following ruling:
This is the Court's ruling based upon once again, the May 24th, 2004hearing wherein the Court heard the testimony of Lisa Orwick and[Orwick's former wife], the Court found based upon the variance in thetestimony of the two people that the court could not find a substantialprobability on that issue, and as a result thereof the Court made itsruling concerning the probative value of the testimony in relation to theprejudicial impact. The Court finds that the STD information based uponthe in camera (sic.) hearing of 5/24/04, doesn't meet the test foradmissibility in the context of this trial.
 {¶ 38} At that point, Orwick went on to proffer that one of the victims would testify that after numerous sexual encounters with Orwick, she never acquired any type of sexually transmitted disease.
 {¶ 39} Upon review of the record, we find that the trial court properly prohibited Orwick from inquiring into whether this victim had a sexually transmitted disease. At the rape shield hearing, the trial court did recognize the disease exception to Ohio's rape shield statute. However, Orwick did not proffer any competent medical evidence to support his assertion that he had a sexually transmitted disease or that he could transmit HPV. Since Orwick failed to lay the proper foundation, such evidence was properly excluded. See State v. Ashcraft, (Sept. 28, 1998), 12th Dist. No. CA97-11-217; State v. Galloway, (Nov. 3, 1983), 8th Dist. No. 46272.
 {¶ 40} Accordingly, the fourth assignment of error is overruled.
 Assignment of Error No V {¶ 41} In the fifth assignment of error, Orwick asserts that he was denied his right to effective assistance of counsel. Specifically, Orwick cites to his trial counsel's failure to cross-examine King, a social worker, more extensively in front of the jury.
 {¶ 42} An ineffective-assistance-of-counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. Statev. Bradley (1989), 42 Ohio St.3d 136, para. two of syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at para. three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Waddy,63 Ohio St.3d at 433.
 {¶ 43} At trial, King was called by the state to testify regarding the second paragraph of a report he had written after a counseling session with Orwick. The report was dated March 8, 2002, and King was called by the State to interpret exactly what he had written in the report. Prior to King testifying in front of the jury, the trial court conducted an in-chambers voir dire of King. During that in-chambers voir dire both the State as well as Orwick's trial counsel questioned King about the report. Following the voir dire, the trial court qualified King as an expert and found that it would allow King's testimony regarding the second paragraph of the March 8, 2002 report.
 {¶ 44} Subsequently, King testified in front of the jury. At this time, Orwick's trial counsel did cross-examine King. However, according to Orwick, his trial counsel should have cross-examined King more extensively, as he had during the voir dire. We find that trial counsel's decision to limit his cross-examination of the State's witness would be a tactical matter. We note that errors of judgment regarding tactical matters will not substantiate a claim of ineffective assistance of counsel. State v. Garrett (1991), 76 Ohio App.3d 57, 61.
 {¶ 45} Accordingly, the fifth assignment of error is overruled.
 Assignment of Error No. VI {¶ 46} In the sixth assignment of error, Orwick contends that the trial court erred in denying his motion for mistrial after one of the State's witnesses testified to polygraph testing of one of the victims.
 {¶ 47} In Ohio, the results of a polygraph examination are admissible as evidence in a criminal trial for purposes of corroboration or impeachment only when the prosecution and defense stipulate to their admissibility. State v. Souel (1978), 53 Ohio St.2d 123, syllabus. In the instant case, the trial court entered a judgment entry, ordering that the State make no reference to the polygraph examination administered to the victims. Despite that admonishment, the following testimony was elicited during the State's direct examination of its own witness Charles Insley, a former Hancock County Deputy Sheriff:
State: After you were done with the interview of the Defendant, whatelse did you do in the course of your investigation?
 Insley: We did some further investigation as far as we did have two ofthe alleged victims take polygraphs.
 {¶ 48} Immediately following Insley's statement, the trial court sustained an objection made by Orwick. Additionally, the trial court instructed the jury that it was to disregard the whole line of questioning.
 {¶ 49} In State v. Collins (1977), 60 Ohio App.2d 116, this Court held that, "[a] reference by a state's witness to the fact that `there were polygraphs given' will not be held prejudicial where it does not appear to whom such tests were given and does not appear as to what results were obtained." Id. at para. three of the syllabus, overruled on other grounds in State v. Brown (1993), 90 Ohio App.3d 674. Additionally, more recently we again addressed this issue in State v.Wobbler, 3d Dist. No. 12-01-01, 2001-Ohio-2308. In Wobbler, despite a similar admonishment, during the cross-examination of State's witness, Officer Chandler, mentioned that the defendant had been given a polygraph test. Id. While acknowledging that reference to a polygraph test is error, we again found that a single reference to a polygraph test with an immediate instruction by the court that the jury disregard such testimony was harmless. Id. Essentially, upon review of the context of the comment in Wobbler, we found that the witness' reference was not deliberate and that the court's instruction was adequate to protect the defendant's right to a fair trial.
 {¶ 50} As in Wobbler, while we find that reference to the polygraph tests is error, we find that a single reference to the polygraph tests is harmless in light of the immediate instruction given by the trial court. Accordingly, the sixth assignment of error is overruled.
 Assignment of Error No. VII {¶ 51} In the seventh assignment of error, Orwick asserts that the trial court erred in allowing King to testify to the March 8, 2002 report. Specifically, Orwick claims that the report fails to show a clear and present danger of past abuse, pursuant to R.C. 2317.02(G)(1)(a).
 {¶ 52} As noted above, following the trial court's initial decision to allow the March 8, 2002 report to be discovered, Orwick appealed the trial court's decision to this Court. In Orwick I, Orwick asked this Court to determine whether the trial court had erred in ordering the release of a privileged communication between a licensed independent social worker and his client. 153 Ohio App.3d at ¶ 7. After determining that R.C. 2317.02(G)(1)(a) was constitutional, we went on to determine to determine whether the trial court had properly applied R.C.2317.02(G)(1)(a) to the March 8, 2002 report. Id. at ¶ 18.
 {¶ 53} In determining this issue, we noted the following:
Turning to the content of the March 8, 2002 document, we again notethat the legislature has specifically directed that "cases in which thereare indications of present or past child abuse or neglect of the clientconstitute a clear and present danger." "Indication" is defined in partas "something (as a signal, sign, suggestion) that serves to indicate[;]" a symptom or particular sign showing the probable existence of acertain circumstance. Therefore, the relevant inquiry is whether thedocument contains a signal, sign, or suggestion that shows the probableexistence of abuse or neglect. In this instance, the trial court reviewedthe context of the document and surrounding circumstances and concludedthat the exchange between King and Orwick, as reported by King, containedindications of present or past child abuse or neglect. Upon review of therecord, we cannot find that the trial court's decision was arbitrary,unconscionable, unsupported by the record, or that no sound reasoningprocess would support the determination.
Id. (emphasis in original.)
 {¶ 54} Accordingly, in overruling Orwick's assignment of error inOrwick I, we held that the March 8, 2002 report contained a sufficient indication of present or past abuse. In this appeal, Orwick again asserts that King should not have been allowed to testify to the March 8, 2002 report, because the report fails to indicate present or past abuse. While Orwick correctly notes that this Court did address the constitutionality of R.C. 2317.02(G)(1)(a) in Orwick I, that is not the only issue that we addressed.
 {¶ 55} As noted above, in Orwick I, we clearly upheld the trial court's finding that the March 8, 2002 report contained an indication of present or past abuse. Under the "law of the case" doctrine, "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." Hawley v. Ritley (1988), 35 Ohio St.3d 157,160, citing Gohman v. St. Bernard (1924), 111 Ohio St. 726, 730, overruled on other grounds in New York Life Ins. Co. v. Hosbrook (1935),130 Ohio St. 101. Accordingly, because we previously held that the March 8, 2002 report contains an indication of present or past abuse, Orwick cannot re-litigate that issue.
 {¶ 56} Additionally, at oral arguments Orwick asserted that the introduction of King's testimony was error, because it was inadmissible opinion testimony. At trial, King's testimony was limited to his background and education, the work he had done with Orwick and, finally, the contents of the second paragraph of the March 8, 2002 report. Regarding the March 8, 2002 report, King first identified State's exhibit 20 as the notes he had prepared following the March 8, 2002 session with Orwick. Next, he went on to give the following testimony:
State: Dan, during your counseling session on March the 8th, 2002, didyou and Defendant discuss the subject of or were there communicationsreferencing sexual abuse?
 King: Yes.
 State: Do your notes on State's Exhibit 20 make reference to thatdiscussion that you had with the Defendant about the sexual abuse?
 King: Yes
 State: When the Defendant indicated to you that the four kids are intreatment with a woman from Upper Sandusky, who were the four kids thathe was referring to?
 King: The two minor children from the marriage between Jim andLisa Orwick, and her two children from a previous marriage.
 State: Okay. And do you know who the Defendant was referring to when heindicated that they were in treatment with a woman from Upper Sandusky?
 King: I did not know who that was.
 State: In your notes he indicated that he related the stated goal is toaccept that they can dislike what he did and still like him. First off,who is he referring to in the terms of they involved in the stated goal.
 King: The children.
 State: And who was he referring to when he indicated that they candislike or the children can dislike what he did, who did something?
 King: Mr. Orwick.
 State: And what did he do?
 King: Something sexually inappropriate.
 State: To whom?
 King: To those children.
 State: And what did he indicate to you was the goal then?
 King: Of the counseling session?
 State: No, in terms of your second paragraph, he indicated to you thatthe goal is to accept that they can dislike what he did, and what's therest of the goal? You can refer to State's Exhibit 20?
 King: And still like him.
 State: Okay, like who?
 King: Mr. Orwick.
 State: Thank you, Dan, the State would have nothing further.
 {¶ 57} Upon review of the above testimony, we cannot find that King gave an opinion as to what happened between Orwick and the children. Rather, in his testimony, King is merely explaining the second paragraph of his March 8, 2002 report. Because that second paragraph of the March 8, 2002 report did not state any names or specific references, King's testimony was used to show what he was specifically referring to in that paragraph. While Orwick attempts to argue that King's testimony is nothing more than his opinion as to what took place, when read in context, King's testimony simply states what the second paragraph of the March 8, 2002 report meant. Because this Court has previously found that the second paragraph of the March 8, 2002 report is not privileged, we cannot say that King's testimony interpreting that paragraph of the March 8, 2002 report was error. Accordingly, because King's testimony as to the second paragraph of the March 8, 2002 report was not inadmissible opinion testimony, the final assignment of error is overruled.
 {¶ 58} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 Cupp, P.J. and Shaw, J., concur.